T.C. Memo. 2009-8

UNITED STATES TAX COURT

JOHN T. AND SHERRI S. ATCHISON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 249-07L.                    Filed January 14, 2009.

<u>Robert Doran Grossman, Jr.</u>, for petitioners.

<u>Wesley J. Wong</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  John and Sherri Atchison didn't file their
tax returns between 1999 through 2003, and eventually found
themselves owing $328,717.  When the Commissioner came to
collect, they offered to compromise this rather large liability
for a little less than three cents on the dollar.  The
Commissioner rejected their offer because he concluded that they

could pay much more or, in IRS jargon, that their account had a higher "reasonable collection potential" of $91,187. In reaching that conclusion, he disallowed expenses that the Atchisons say were perfectly reasonable. The Commissioner says he was just following guidelines. We must decide whether he abused his discretion by doing so.

## Background

Both Atchisons are business owners. John owns Atchison Welding, a construction and welding company. Sherri is a manicurist with her own company called Atchison Services. They've managed to do well together--in 2005 he made a gross profit of around $117,000 and she took home $1,251.

But they neglected to file tax returns from 1999 through 2003. The Commissioner caught up with them and filed substitutes for returns (SFRs) computing their tax liability. This prompted the Atchisons into discussions with the IRS, and in December 2004 the Atchisons signed a Form 4549, Income Tax Examination Changes, agreeing that the Commissioner could collect unpaid tax for all five years. They then timely filed their 2004 tax return, but failed to withhold enough, leaving themselves with another tax bill that they didn't pay. In October 2005, the Commissioner notified them that he intended to levy on their property to collect all their unpaid taxes for 1999-2004. The Atchisons hired a lawyer and asked for a collection due process (CDP)

hearing.

The Atchisons can't challenge the amount of their tax liability (at least from 1999-2003) because they agreed to its assessment, but section 6330[1] does give them the right to ask for a hearing where they can offer alternatives to having the IRS seize their property, such as an offer-in-compromise (OIC) or an installment agreement.  The Atchisons wanted a fresh start, and to get one they offered to compromise their tax debt.  For the IRS to even consider such an offer, though, taxpayers have to be current in their filings and on track to pay their future taxes as they come due.  The Appeals officer conducting the hearing was skeptical; he noted that although the Atchisons' 2005 tax return wasn't yet due, the couple had not made any estimated tax payments at all, and he warned them that they had better do so for 2005 and 2006.  The Atchisons responded by submitting another compromise offer that swept in their 2005 tax debt, too.  But they did also include their estimated tax payments for 2006.  The Appeals officer concluded that this put them into compliance and filed their OIC for processing as an OIC based on doubt as to collectibility.  The Atchisons were claiming that they didn't have enough assets to fully pay their tax debt, and their OIC proposed to settle what was by then a debt of $328,717 for only

_____

[1] Unless otherwise noted all section references are to the Internal Revenue Code, and Rule references are to our Rules of Practice and Procedure.

$9,216.

In preparing their OIC, the Atchisons filled out Forms 433-B, Collection Information Statement for Businesses, for both the welding and manicure businesses. The expenses that they listed on these forms are central to this case. The key is the Atchisons' claim for a depreciation expense of $20,876 for equipment used in the welding business. Of this amount, $20,000 was a section 179[2] expense for a pickup truck and a welder that John bought in 2005. The remaining $876 was a depreciation expense for a welding truck. The Atchisons also claimed a $750 transportation expense, and a monthly $200 "other expense."

The Appeals officer reviewed the OIC and wrote the Atchisons' lawyer that he was unable to accept it because it was so much lower than what he calculated the Atchisons' reasonable collection potential (RCP) to be. Calculation of the RCP is complicated, but its result is easy to understand--it's the IRS's estimate of how much a taxpayer can pay from a combination of his income and the immediately realizable value of his property. The Appeals officer handling the Atchisons' case computed their future income by using their actual income in 2005:

---

[2] Section 179 allows a taxpayer in some circumstances to deduct the entire cost of a capital asset in the year in which he puts it into service, rather than depreciating the cost over time.

Mr. Atchison's income

| | |
|---|---|
| 2005 Schedule C income | $60,685 |
| Disallowed depreciation and sec. 179 deduction | 20,876 |
| | 81,561 |
| Mrs. Atchison's Income | 1,251 |
| Total Annual Income | 82,812 |
| Monthly Income | 6,901 |

The Appeals officer then subtracted expenses from income. He allowed all the expenses that they had listed on their Forms 433-B, except for a part of their transportation expense (which is no longer at issue) and the depreciation expense. The Appeals officer even allowed higher housing and tax expenses than the Atchisons had claimed on the Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Subtracting expenses from gross income, the Appeals officer computed their monthly net income to be $1,615. Following the guidance of the Internal Revenue Manual (IRM), he multiplied this monthly income by 48 to compute the Atchisons' future income that would be available to pay their tax debt. See IRM pt. 5.8.5.5(1)(A)(Sept. 1, 2005).

The Appeals officer computed the second component of the Atchisons' RCP, their equity in property that could be sold, by using those assets' quick sale value (QSV), which the IRM generally defines as 80 percent of fair market value (FMV). Id. pt. 5.8.5.3.1 (Sept. 1, 2005). The Atchisons' equity:

| Assets | FMV | QSV | Encumbrance | Net Equity |
|---|---|---|---|---|
| House | $551,356 | $441,085 | $495,000 | --- |
| 2001 Chevrolet | 10,000 | 8,000 | --- | $8,000 |
| US Bank checking | 367 | 367 | --- | 367 |
| 1997 GMC | 6,000 | 4,800 | --- | 4,800 |
| Community Bank checking | 500 | 500 | --- | 500 |
| Total | 568,223 | 454,752 | 495,000 | 13,667 |

The Appeals officer then added the Atchisons' future income to their net equity and computed an RCP of $91,187.

The Appeals officer didn't include the value of the couple's house in determining RCP since the remaining mortgage debt was more than the house's quick sale value. See id. pt. 5.8.5.3.1(1) (Sept. 1, 2005). He also either overlooked, or generously excluded from his calculation, a $6,200 account receivable.[3] He also didn't consider the value of the welder as an asset. This isn't surprising--the Atchisons hadn't listed it as an asset on their collection information forms. (The Atchisons gave the Appeals officer only a Schedule C, Profit or Loss From Business, showing their total depreciation expense, not a list of any

---

[3] Although IRM pt. 5.8.5.3.12 (Sept. 1, 2005) considers accounts receivable as assets, it does allow a discounted value to be used for accounts receivable that may be difficult to collect. Id. pt. 5.8.5.3.12(2)(A) (Sept. 1, 2005). But the Appeals officer didn't consider the value of the account receivable at all--at least it's not listed in his table calculating the Atchisons' RCP.

specific depreciable assets.[4])  The Commissioner learned the specifics only from the Atchisons' papers in this case.  No matter--even without knowing what the Atchisons were taking a section 179 deduction for, the Appeals officer would have disallowed it because the IRM tells him to disallow depreciation (or any item listed on Form 4562 Depreciation and Amortization, which includes section 179 deductions) in calculating an RCP. IRM pt. 5.15.1.13(9) (May 1, 2004).

The Appeals officer gave the Atchisons more time to submit an amended OIC.  When they didn't, he rejected their OIC and issued a notice of determination sustaining the levy.  The Atchisons appealed and trial was set to begin in Las Vegas, where they resided when they filed their petition.  The parties then submitted the case for decision on cross-motions for summary judgment.

#### Discussion

Summary judgment is appropriate where it is shown that "there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b); Fla.

---

[4] Including the other depreciable assets--the welding and pickup trucks--in the RCP calculation may have been contrary to IRM part 5.8.5.3.3(1) (Sept. 1, 2005), which exhorts Appeals officers to make adjustments to taxpayers' RCP when those assets are "essential for the production of income."  The Atchisons didn't raise this issue, though, so we deem it conceded.  See Rule 331(b)(4); Goza v. Commissioner, 114 T.C. 176, 183 (2000).

Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The parties don't dispute the facts. The Commissioner contends (and the Atchisons agree) that he was just applying the IRM in disallowing the Atchisons' depreciation expenses.

The crux of this case is the Appeals officer's disallowance of the Atchisons' $20,876 depreciation expense. He added this expense back to the Atchisons' income, increasing their monthly income and thus their RCP. The Atchisons argue that the IRM guideline telling him to do so is inconsistent with the Code, because the Code itself recognizes depreciation as an expense. See secs. 167, 168, 179. By not allowing depreciation expenses in computing an RCP, the Atchisons argue, the Commissioner based his determination sustaining the levy on an illegal guideline; and relying on an illegal guideline is necessarily an abuse of discretion because it would be an error of law.

This is a difficult argument. Section 7122 gives the Commissioner a very wide discretion, providing that he "may" compromise tax liabilities and authorizing him to establish guidelines for the IRS to "determine whether an offer-in-compromise is adequate and should be accepted." Sec. 7122(a),(d)(1). Section 7122 was amended by the Tax Increase Prevention and Reconciliation Act of 2005, Pub L. 109-222, sec. 509 (a), (b), (d), 120 Stat. 362, 363, 364 (2006). By telling the Commissioner, and not the courts, to develop guidelines,

Congress is telling us to give him a very wide range of discretion.  We have already recognized in other cases that it's within the Commissioner's power to exclude some expenses for the RCP computation.  For example, we've upheld the Commissioner's discretion to disallow housing expenses that are higher than those allowable under the IRM's standards.  Schulman v. Commissioner, T.C. Memo. 2002-129.  We've also affirmed the Commissioner's disallowance of "conditional expenses" under the IRM.[5]  Etkin v. Commissioner, T.C. Memo. 2005-245.  We've also noted many times that, though the IRM doesn't have the force of law, it is persuasive authority.  Ginsburg v. Commmissioner, 127 T.C. 75, 87 (2006).  And the result is that we've generally upheld Appeals officers' determinations of whether to accept an OIC as reasonable when they've followed the IRM.  We seem to have overturned the Commissioner's OIC rejections--where he followed the IRM--only twice:  Harris v. Commissioner, T.C. Memo. 2006-186, where there were two OICs submitted and an Appeals officer failed to conduct an independent review of the taxpayer's financial information and prepare a financial analysis, as the Code requires; and Blosser v. Commissioner, T.C. Memo. 2007-323,

_____

[5] Conditional expenses are expenses the Commissioner takes into account in calculating payments under an installment agreement.  They're called "conditional" because the Commissioner allows them only if doing so wouldn't interfere with a taxpayer's ability to pay his entire tax debt in less than five years.  IRM pt. 5.8.5.5.3 (Sept. 1, 2005).

where we rejected the Commissioner's decision not to accept an OIC because he failed to properly conduct the analysis required by section 6330(c)(3)(B). We've even affirmed the Commissioner when his rejection of an OIC foreseeably resulted in substantial hardship to taxpayers. See Speltz v. Commissioner, 124 T.C. 165, 176-78 (2005), affd. 454 F.3d 782 (8th Cir. 2006). And we will uphold the Commissioner again here. Our most important reason is that the Atchisons offered less than 3 cents on the dollar to compromise their tax liability, which is far less than the RCP. We routinely uphold rejections of OICs when the amount offered is so much lower than the RCP. Lemann v. Commissioner, T.C. Memo. 2006-37. We've also held that the Commissioner doesn't abuse his discretion by rejecting an OIC that "bore no relationship" to the taxpayer's own calculations of his ability to pay. McDonough v. Commissioner, T.C. Memo. 2006-234. That's what was going on here--even subtracting the disallowed depreciation expense from the Atchisons income leads to an RCP of $70,311, still far more than the Atchisons' offer.

We do recognize that reasonable minds can differ on some of the numbers that go into calculating an RCP. For example, in Lloyd v. Commissioner, T.C. Memo. 2008-15, two IRS employees (reviewing slightly different OICs) made different determinations on what Lloyd's RCP was. We held that the Appeals officer didn't abuse his discretion in basing his determination on the second

RCP calculation, rather than the first, since the second was based on the IRM's guidelines.  We noted there that, even if the Appeals officer had been wrong in relying on the second RCP calculation, he wouldn't have abused his discretion, because the taxpayer was offering less than either RCP.  We likewise held, in Carter v. Commissioner, T.C. Memo. 2007-25, that even when the Commissioner goofed in calculating the RCP--looking at income for the next 86 months instead of the next 48--he did not abuse his discretion because the taxpayer's offer was far less than even the correctly calculated RCP.

But the Commissioner's reasonableness is not grounded only in the harmlessness of any error he might have made.  We think he was completely reasonable in excluding the Atchisons' depreciation (and section 179) expenses from his calculation of their RCP:  Though he excluded these expenses in his calculations, it's not as if he ignored the reality that old used property is worth less than when it was new--he bases a taxpayer's net equity on a depreciable asset's FMV.  And FMV includes a discount reflecting economic depreciation, if not tax-accounting depreciation.  This use of FMV, instead of, for example, replacement value, in calculating net equity lowers the RCP.  So we conclude the Commissioner's general exclusion of depreciation is reasonable.

The Commissioner is also correct that the Atchisons did not

identify the depreciated property as business property on their Forms 433-B: The $7,500 welder makes no appearance on any form, and the two trucks allegedly used for welding are listed on the Form 433-A as personal property. Depreciation is not allowed for personal property even in calculating taxes, much less for purposes of an OIC. Sec. 167(a). And failure to include the welder on any form effectively precluded the Appeals officer from investigating whether the Atchisons equity in the welder would increase their RCP. The Atchisons say that expensing the welder in 2005 meant they were right to leave it off the Form 433-B; this is patently wrong. If a taxpayer still owns an item that could be sold to raise money to pay a tax liability, it could possibly increase his RCP. We can't fault the Appeals officer for refusing to consider depreciation in the RCP when the Atchisons didn't tell him what it was they were depreciating.

Finally, we note that the Appeals officer told the Atchisons that they needed to increase their offer and kept an open mind to another offer. The record shows that he even kept an open mind to the possibility that they could persuade him to change his calculation of their RCP. See Samuel v. Commissioner, T.C. Memo. 2007-312. As we've already noted, he also allowed some expenses that were higher than the Atchisons even requested. He coupled this openmindedness with a deadline to respond. And even though the Atchisons let that deadline expire without increasing their

offer, the Appeals officer still waited another week to close the case.  So the Atchisons had ample opportunity to submit a new OIC or to provide more documentation to change the Appeals officer's mind, but chose not to.  They also proposed no other collection alternatives, so the Commissioner had no less intrusive means to consider.  Having exercised his discretion reasonably,

<u>An appropriate order and decision for respondent will be entered</u>.