T.C. Memo. 2015-61

UNITED STATES TAX COURT

KEVIN R. GURULE AND DAWN M. GURULE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13323-13L.                        Filed March 31, 2015.

Kevin R. Gurule and Dawn M. Gurule, pro sese.

John Schmittdiel and Jeremy J. Eggerth, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  In a Notice of Determination Concerning Collection

Action(s) Under Section 6320 and/or 6330[1] (notice of determination), respondent

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) as amended and in effect at all relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

[*2] sustained the proposed collection by levy of petitioners' unpaid Federal income tax for taxable year 2009. The issue for decision is whether respondent abused his discretion in sustaining the proposed levy. Because we are unable to determine on the record before us whether respondent abused his discretion, we will remand to the Internal Revenue Service (IRS) Appeals Office for further proceedings.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioners resided in Minnesota when they petitioned this Court.

I. Background

Petitioners are husband and wife. Mr. Gurule has an associate's degree in aviation electronics and a bachelor's degree in business management. He worked for General Mills for 18 years, beginning as a technician and then moving up in the company. His job required him to move several times, most recently from Minnesota to Missouri in 2009. Each time his family moved with him. Mr. Gurule lost his job three months after petitioners moved to Missouri. The family moved back to Minnesota, and after four to five months of unemployment Mr.

[*3] Gurule found a job at the manufacturing facility of a grocery chain. He was working there on the date of the trial in this case.

Mrs. Gurule has a severe neurological condition that causes her to suffer seizures and has prevented her from working. She has had brain surgery, takes medication, and has many doctor visits per year because of her medical condition.

Petitioners' middle and youngest sons continued to reside with them throughout the various moves. Their middle son was in an accident as a child and suffered a brain injury. He had medical problems throughout his life as a result of the injury. Tragically, petitioners' middle son passed away in August 2013 from these medical problems. Petitioners have not yet been able to place his ashes in a mausoleum because doing so would cost between $7,000 and $10,000 and they are unable to pay the cost.

Petitioners owned a home in Minnesota. When they moved to Missouri in 2009, they put the Minnesota home up for sale and were in the process of buying a house in Missouri. Mr. Gurule took distributions from a section 401(k) plan account he maintained with Great West Retirement for the downpayment, but petitioners were not able to purchase the house after Mr. Gurule lost his job. The section 401(k) plan account distributions generated the underlying tax liability in this case. After petitioners moved back to Minnesota, they lived in the Minnesota

**[*4]** house until December 2012. At that time the mortgage on petitioners'
Minnesota home was the subject of a foreclosure proceeding, and they moved.

Mr. Gurule had two loans from his section 401(k) plan account outstanding
at the time of the foreclosure. In January 2013 Mr. Gurule took out another loan
from his section 401(k) plan account (third section 401(k) plan account loan)
because petitioners had unexpected expenses after the foreclosure, including
moving expenses, a security deposit, and the first month's rent for a new
residence. Mr. Gurule's earnings statements from 2012 show that amounts
between $332.88 and $403.56 were deducted from his biweekly paycheck to pay
back the first two section 401(k) plan account loans. The third section 401(k) plan
account loan increased his biweekly payroll deduction to $536.24.[2] In or around
March 2013 Mr. Gurule obtained funds to pay petitioners' son's medical expenses
by taking out another section 401(k) plan account loan (fourth section 401(k) plan
account loan). This increased Mr. Gurule's biweekly payroll deduction to $622.[3]

---

[2]In a letter to respondent Mr. Gurule stated that the third sec. 401(k) plan
account loan increased his payroll deduction to "$536.24 per month coming out of
each paycheck." This statement appears to have been incorrect because, as
petitioners' Form 433-A, Collection Information Statement for Wage Earners and
Self-Employed Individuals, and Mr. Gurule's earnings statements in the
administrative record show, he was paid biweekly.

[3]In a letter to respondent Mr. Gurule stated that the fourth sec. 401(k) plan
(continued...)

**[*5]** After petitioners' middle son passed away in August 2013, Mr. Gurule took out a fifth section 401(k) plan account loan (fifth section 401(k) plan account loan) to pay for his son's funeral services.  Mr. Gurule's earnings statements for February 2014 show that this additional loan increased the biweekly payroll deduction to $694.70.

II.    The Liability and the Collection Process

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for taxable year 2009.  On May 2, 2011, respondent sent a Notice CP2000 to petitioners proposing adjustments to their 2009 Federal income tax on the basis of third-party information returns showing that Mr. Gurule had section 401(k) plan account distributions during the year.  The record is unclear as to whether respondent sent petitioners a statutory notice of deficiency as required under section 6213(a).  In November 2011 respondent assessed additional tax of $36,516 and an accuracy-related penalty of $6,756.  Petitioners did not pay the assessed amounts, and respondent's Automated Collection System Section issued a Letter

---

[3](...continued)
account loan increased the repayment to "$622.00 per month coming out of each paycheck".  This statement is incorrect because Mr. Gurule was paid biweekly. See supra note 2.

**[*6]** 1058, Notice of Intent to Levy and Notice of Your Right to a Hearing, on May 7, 2012.[4]

Petitioners timely requested a section 6330 hearing. In their request, they indicated that they could not pay the balance and stated: "Collection will cause a hardship. I need an offer in compromise or installment agreement, penalties should be cancelled for reasonable cause."

Petitioners' case was assigned to Settlement Officer Lori Degiovanni in the IRS Appeals Office. On August 21, 2012, petitioners submitted to Settlement Officer Degiovanni a Form 656, Offer in Compromise, a Form 433-A, and supporting financial information. The offer-in-compromise (OIC) request, in which petitioners proposed to settle their tax liability for $950 paid over five months, was based on doubt as to collectibility.

The Appeals Office retained jurisdiction over the case while the IRS' Centralized Offer in Compromise (COIC) Unit researched petitioners' OIC request and verified their financial information. By letter dated November 28, 2012, the COIC Unit informed petitioners that it could not accept the proposed OIC but indicated a willingness to receive additional information. In response, petitioners

---

[4]The Letter 1058 also stated that petitioners were liable for an addition to tax for late payment pursuant to sec. 6651(a)(3).

**[*7]** sent the COIC Unit a letter dated January 9, 2013, and financial documentation. The letter explained the family's medical problems, the foreclosure proceedings, and the third section 401(k) plan account loan. The mortgage on the Minnesota house was foreclosed upon and Mr. Gurule had taken out the third section 401(k) plan account loan after petitioners submitted their OIC. The financial information petitioners sent included documentation of the moving expenses and the medical expenses.

On January 29, 2013, the COIC Unit preliminarily rejected petitioners' proposed OIC because it contended that petitioners could fully pay the liability on the basis of their calculated net realizable equity and future income.[5] The COIC Unit determined petitioners' net realizable equity to be $19,342.80, which it computed by adding the total value of petitioners' bank account balance of $1,700, Mr. Gurule's section 401(k) plan account net realizable equity of $16,442.80, and vehicle net realizable equity of $1,200. The COIC Unit calculated the net

---

[5]The term "net realizable equity" is defined as "quick sale value * * * less amounts owed to secured lien holders with priority over the [F]ederal tax lien". Internal Revenue Manual (IRM) pt. 5.8.5.4.1(1) (Oct. 22, 2010). The term "quick sale value" used in the definition of "net realizable equity" is defined to mean "an estimate of the price a seller could get for the asset in a situation where financial pressures motivate the owner to sell in a short period of time", usually 80% of the fair market value of the asset. Id. pt. 5.8.5.4.1(2) and (3); see Lane v. Commissioner, T.C. Memo. 2013-121.

**[\*8]** realizable equity of Mr. Gurule's section 401(k) plan account by reducing the fair market value of $71,704 by 30% to account for Federal income tax and then subtracting a loan balance of $33,750. The COIC Unit did not consider Mr. Gurule's then-existing third section 401(k) plan account loan in calculating the section 401(k) plan account's net realizable equity.

The COIC Unit determined petitioners' monthly gross income, monthly expenses, and monthly net income to be $8,663, $8,225, and $438, respectively. On the basis of petitioners' net realizable equity of $19,342.80 and monthly net income of $438 over 110 months, the COIC Unit determined that petitioners could fully satisfy their tax liability, which then totaled $46,657.77.

The COIC Unit then transferred the OIC case file to the Appeals Office for a final determination. After receiving the case file, Settlement Officer Degiovanni prepared an asset equity table and an income and expense table, which showed the following:

[*9]                              Asset Equity Table[1]

| Asset | Fair market value | Percent reduced | Quick sale value | Encumbrances | Appeals equity |
|---|---|---|---|---|---|
| Checking acct. | $1,700 | -0- | -0- | -0- | -0- |
| Sec. 401(k) plan acct. | [2]69,079 | [3]-0- | $48,355 | $34,097 | $14,258 |
| Vehicle 1 | 1,500 | 20% | 1,200 | -0- | -0- |
| Total | | | | | 14,258 |

[1]Categories without a value in any column have been omitted.

[2]The record does not explain why the COIC Unit and Settlement Officer Degiovanni assigned a different fair market value to Mr. Gurule's sec. 401(k) plan account.  The notice of determination makes clear that the difference was not a result of Settlement Officer Degiovanni's taking the third sec. 401(k) plan account loan into consideration.  See infra pp. 30-31.

[3]Though Settlement Officer Degiovanni's chart shows 0% reduced, the quick sale value implies that she reduced the fair market value of the sec. 401(k) plan account by 30%.

Income Table

| Item | Claimed[1] | Appeals |
|---|---|---|
| Gross wages | $6,694 | $8,202 |
| Social Security | -0- | 459 |
| Total | 6,694 | 8,661 |

[1]This column reflects the income that petitioners claimed on their Form 433-A.

[*10]                                    Expense Table

| Expense | Claimed[1] | Appeals |
|---|---|---|
| National standard | $1,021 | $1,450 |
| Housing and utilities | 2,197 | 2,581 |
| Vehicle ownership | 420 | 409 |
| Vehicle operating | 632 | 432 |
| Taxes (on income) | 1,427 | 1,427 |
| Health insurance | 287 | 287 |
| Out-of-pocket health care | 550 | 550 |
| Life insurance | 130 | 130 |
| Other secured debt | -0- | -0- |
| Additional vehicle operating | -0- | 400 |
| Total | [2]6,664 | 7,666 |

[1]This column reflects the expenses that petitioners claimed on their Form 433-A.

[2]Petitioners' Form 433-A incorrectly stated that the expenses totaled $6,644. The correct total is $6,664.

Settlement Officer Degiovanni did not allow a monthly expense for Mr. Gurule's payroll deduction related to the section 401(k) plan account loans at that time.

On the basis of these calculations, Settlement Officer Degiovanni found that petitioners had monthly disposable income and a reasonable collection potential[6] (RCP) of $995 and $26,198, respectively, and she therefore preliminarily determined that petitioners would be able to pay the tax liability in full. On March

---

[6]Reasonable collection potential is generally the sum of a taxpayer's net realizable equity and future income. IRM pt. 5.8.4.3.1 (June 1, 2010); see infra pp. 27-28.

**[*11]** 1, 2013, Settlement Officer Degiovanni sent petitioners a letter explaining her preliminary determination and scheduling a telephone call for April 9, 2013. The letter also stated that petitioners could provide additional information by March 22, 2013.

In response to the letter, petitioners sent Settlement Officer Degiovanni additional financial information, including a pay stub, rent checks, utility bills, and medical bills. Mr. Gurule also included a letter explaining certain housing and vehicle expenses and the fourth section 401(k) plan account loan. Although he stated in the letter that the fourth section 401(k) plan account loan had increased his payroll deduction to $622, petitioners did not provide an updated earnings statement to this effect. The pay stub that petitioners sent was current as of February 2013 and reflected only the first three section 401(k) plan account loans.

Mr. Gurule and Settlement Officer Degiovanni spoke on the telephone on April 11, 2013. Following the telephone call, Settlement Officer Degiovanni recalculated petitioners' expenses as follows:

| [*12]  Expense | Claimed[1] | Appeals |
|---|---|---|
| National standard | $1,021 | $1,465 |
| Housing and utilities | 3,051 | 2,778 |
| Vehicle ownership | 420 | 409 |
| Vehicle operating | 632 | 432 |
| Taxes (on income) | 1,427 | 1,427 |
| Health insurance | 287 | [2]287 |
| Out-of-pocket health care | 550 | [3]626 |
| Life insurance | 130 | 130 |
| Other secured debt | -0- | -0- |
| Additional vehicle operating | -0- | 400 |
| Sec. 401(k) plan acct. loan | 622 | 536 |
| Total | [4]6,664 | 8,490 |

[1]This column reflects the expenses that petitioners claimed during the sec. 6330 hearing.

[2]Although Mr. Gurule stated that his taxes and medical insurance costs had increased, Settlement Officer Degiovanni did not adjust these amounts because she determined that the difference was netted out by increased wages and smaller contributions to a healthcare flexible spending account.

[3]Settlement Officer Degiovanni increased petitioners' allowable medical expenses to $626 per month, which she calculated by totaling all of the medical bills in the record and dividing by 15 months.

[4]Settlement Officer Degiovanni's calculations and the notice of determination show an incorrect total of $6,664. The correct total is $8,140.

As the table above reflects, Settlement Officer Degiovanni included a part of Mr. Gurule's payroll deduction for the section 401(k) plan account loans as an expense when she recalculated petitioners' expenses. She allowed a $536 monthly expense for the section 401(k) plan account loans because Mr. Gurule's most

- 13 -

**[*13]** recent earnings statement "shows $536 being deducted".  Mr. Gurule was paid biweekly, but Settlement Officer Degiovanni allowed only $536 as Mr. Gurule's monthly expense for the section 401(k) plan account loans.

Settlement Officer Degiovanni did not reduce the net realizable equity in Mr. Gurule's section 401(k) plan account by the amount of the third or fourth section 401(k) plan account loan.  As the case activity record explains, because petitioners "chose to borrow an additional amount against the equity in the IRA, knowing that they owed [F]ederal taxes, we will not now consider the additional loan encumbrance when figuring RCP.  This could also be considered a dissipated asset."  We construe this statement to mean that Settlement Officer Degiovanni considered the additional loan amounts to be dissipated assets.

On the basis of these adjustments, Settlement Officer Degiovanni determined that petitioners' RCP was $16,310 and their monthly net income was $171.  She therefore rejected petitioners' proposed OIC of $950.  She offered petitioners the choice of either increasing their OIC or accepting an installment agreement with a payment of $171 per month and the filing of a notice of Federal tax lien.  She also informed petitioners that they did not meet the requirements for currently not collectible status.

[*14] On April 18, 2013, Mr. Gurule called Settlement Officer Degiovanni to propose an installment agreement with a payment of $120 per month. Petitioners felt this was the maximum they could pay because this was the amount left in their bank account at the end of each month. Settlement Officer Degiovanni did not accept this amount because her financial analysis showed monthly net income of $171. Petitioners alternatively offered to increase their OIC to $6,100. Settlement Officer Degiovanni did not accept this offer because she determined that petitioners' RCP exceeded this amount.

Respondent sent petitioners a notice of determination on May 13, 2013, sustaining the proposed levy. The notice of determination explained the Appeals Office's final calculations of petitioners' net realizable equity, monthly income and expenses, and RCP. The notice of determination further stated: "We will not consider additional encumbrances against your 401(k), which you chose to take when you were aware that you had an outstanding tax liability."

Because petitioners' two OIC proposals were below the calculated RCP, the notice of determination sustained the proposed collection action by levy. The notice of determination also stated that the applicable law, regulations, and procedures had been followed and that the Appeals Office balanced the need for efficient collection with petitioners' concern that the collection action be no more

[*15] intrusive than necessary. However, the notice of determination did not address petitioners' claim of financial hardship, which they brought to the attention of the Appeals Office with their section 6330 hearing request. Settlement Officer Degiovanni's case activity report likewise does not mention the financial hardship claim.

Petitioners timely filed a petition disputing the notice of determination on June 12, 2013.[7] After the filing of the petition, petitioners' middle son passed away, and Mr. Gurule took out the fifth section 401(k) plan account loan to pay for the funeral services.

On March 11, 2014, petitioners sent respondent an updated but unsigned Form 433-A showing increased expenses that exceeded their monthly income by $250. Petitioners also sent respondent a printout that shows, as of April 8, 2014, that Mr. Gurule was eligible to take out an additional $4,753.33 from his section 401(k) plan account as a loan. If he took out an additional loan from the section

---

[7]Petitioners initially elected to have this case treated under small tax case procedures. See sec. 7463(f)(2). Before trial respondent requested by oral motion that the "S" designation be removed because, at the time the notice of determination was issued, petitioners' total balance slightly exceeded the $50,000 cap on small tax cases. See sec. 7463(a)(1), (d); Leahy v. Commissioner, 129 T.C. 71, 76 (2007). The Court granted respondent's oral motion.

[*16] 401(k) plan account in this amount, his biweekly loan repayment would increase to $816.67.

OPINION

I.    Section 6330 Hearing

Under section 6331(a), the Secretary may levy upon property and property rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days after notice and demand for payment.  Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.  Section 6330(a) and (b) and section 6331(d) provide that the Secretary must give at least 30 days' written notice to the taxpayer of his intent to levy and must send the taxpayer written notice of the taxpayer's right to a hearing before the IRS Appeals Office at least 30 days before any levy begins.

If a taxpayer requests a hearing in response to a notice of intent to levy pursuant to section 6330, a hearing shall be held before an impartial officer or employee of the Appeals Office.  Sec. 6330(b)(1), (3).  At the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer is precluded from contesting the existence or amount

[*17] of the underlying tax liability unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); see Sego v. Commissioner, 114 T.C. 604, 609 (2000). The phrase "underlying tax liability" includes the tax deficiency, additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000).

In determining whether to sustain the proposed collection action, the settlement officer must take into account verification of the Secretary's compliance with "the requirements of any applicable law or administrative procedure", the issues that the taxpayer raised at the hearing, and whether the collection action "balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Sec. 6330(c)(1), (3); e.g., Goza v. Commissioner, 114 T.C. 176, 180-181 (2000). The Court has jurisdiction to review this determination. Sec. 6330(d)(1); e.g., Sego v. Commissioner, 114 T.C. at 609.

Where the underlying tax liability is properly at issue, the Court reviews the determination de novo. E.g., Goza v. Commissioner, 114 T.C. at 181-182. Where the validity of the underlying tax is not properly at issue, the Court reviews the Commissioner's determination for abuse of discretion. E.g., Sego v.

**[\*18]** <u>Commissioner</u>, 114 T.C. at 610. The Appeals Office abuses its discretion when its exercise of discretion is arbitrary, capricious, or without sound basis in fact or law. <u>Murphy v. Commissioner</u>, 125 T.C. 301, 308, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

## II.     Section 6330(c)(1) Requirements

Pursuant to section 6330(c)(1), the settlement officer shall "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." When the IRS has assessed additional tax from its determination of a deficiency in the income tax that married taxpayers reported on a joint return, the settlement officer must verify each of the following: (1) either that the Commissioner mailed a valid notice of deficiency to the taxpayers at their last known address (or addresses) or each spouse signed an appropriate waiver, secs. 6212(b), 6213; (2) that the Commissioner made a valid assessment, sec. 6203; (3) that the Commissioner issued notice and demand, sec. 6303; (4) that the taxpayers did not pay the liability, sec. 6331(a); and (5) that the Commissioner issued to the taxpayers notice of intent to collect the outstanding liability by levy and of the taxpayers' right to a hearing, sec. 6330(a); <u>see</u> <u>Ron Lykins, Inc. v. Commissioner</u>, 133 T.C. 87, 96-97 (2009); <u>Manko v.</u>

**[\*19]** <u>Commissioner</u>, 126 T.C. 195, 203 (2006); <u>Freije v. Commissioner</u>, 125 T.C. 14, 35 (2005); <u>Marlow v. Commissioner</u>, T.C. Memo. 2010-113.

The settlement officer must verify that these requirements have been satisfied. Sec. 6330(c)(1), (3)(A); <u>Hoyle v. Commissioner</u>, 131 T.C. 197, 201-202 (2008), <u>supplemented by</u> 136 T.C. 463 (2011). If they have not, collection cannot proceed and the settlement officer cannot sustain the proposed collection action. <u>See</u> <u>Med. Practice Solutions, LLC v. Commissioner</u>, T.C. Memo. 2009-214. The Court reviews the Appeals Office's verification under section 6330(c)(1) without regard to whether the taxpayers raised these issues during the section 6330 hearing. <u>Hoyle v. Commissioner</u>, 131 T.C. at 202-203.

The IRS was required to send Mr. and Mrs. Gurule a notice of deficiency before assessing tax. <u>See</u> sec. 6213(a); <u>see also</u> <u>Commissioner v. Shapiro</u>, 424 U.S. 614, 616-617 (1976); <u>Manko v. Commissioner</u>, 126 T.C. at 200-201; <u>Freije v. Commissioner</u>, 125 T.C. at 34-37. However, a copy of a notice of deficiency is not in the record. The notice of determination does not say that the Appeals Office verified the mailing of a notice of deficiency. This is especially worrisome because the notice of determination specifically states that the settlement officer verified each of the other statutory requirements. Settlement Officer Degiovanni's case activity record states that she verified that the Letter 1058 was sent to

[*20] petitioners and other procedural requirements were satisfied, but it does not indicate that she verified that an appropriate notice of deficiency was mailed to petitioners at their last known address.

The only possible reference to a notice of deficiency appears in the case history transcript, which has an entry for a "STAT NOTICE" on August 1, 2011. The case history transcript does not indicate when, if ever, the Commissioner mailed this notice to petitioners. Because multiple notices required by applicable Code provisions and related regulations must be sent to taxpayers before and during the collection process, the Court cannot tell whether the "STAT NOTICE" entry refers to the mailing of a notice of deficiency. On the basis of the limited record before us, the Court cannot determine whether Settlement Officer Degiovanni verified that the IRS properly mailed a notice of deficiency to petitioners. We may remand when the Appeals officer did not develop a record sufficient for judicial review. See Hoyle v. Commissioner, 131 T.C. at 204-205; Churchill v. Commissioner, T.C. Memo. 2011-182. Accordingly, we will remand this case to the Appeals Office for it to clarify the record as to whether it verified that a notice of deficiency was properly sent to petitioners at their last known address and, if so, on what it relied to do so.

**[*21]** III.  Section 6330(c)(2) Requirements

Once the settlement officer verifies that the applicable law and administrative procedures have been followed, the settlement officer must consider any relevant issue that the taxpayer has raised relating to the unpaid tax or the proposed levy.  Sec. 6330(c)(2); see Sego v. Commissioner, 114 T.C. at 608-609.  Petitioners argue that Settlement Officer Degiovanni did not properly address the issues they raised in the section 6330 hearing.  We cannot determine on the basis of the record before us whether the settlement officer properly considered the issues petitioners raised in the section 6330 hearing.

A.     Economic Hardship and Necessary Living Expenses

Petitioners assert that the proposed collection action should not proceed because they are experiencing economic hardship and the equity in their only meaningful asset, Mr. Gurule's section 401(k) plan account, is needed as a source for loans to pay necessary living expenses.  Section 6343(a)(1)(D) directs the Commissioner to release a levy upon all, or part of, a taxpayer's property if he determines that a levy would cause economic hardship to the taxpayer.  A levy causes "economic hardship" when the taxpayer would be unable to pay reasonable basic living expenses, according to the taxpayer's complete and current financial information, if a levy were made.  Washington v. Commissioner, 120 T.C. 137,

**[*22]** 149-150 (2003); sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; see sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs. (outlining what constitutes basic living expenses and including any "factor that the taxpayer claims bears on economic hardship and brings to the attention of the director"). By extension, the settlement officer in a section 6330 hearing may not proceed with a proposed levy when a taxpayer establishes that it would create an economic hardship because section 6343 would require the levy's immediate release. Vinatieri v. Commissioner, 133 T.C. 392, 400, 402 (2009) ("Proceeding with the levy would be unreasonable because section 6343 would require its immediate release, and the determination to do so was arbitrary."). Instead, the settlement officer "must consider an alternative." Id. at 401.

Beyond this statutory requirement, the IRS has implemented its own procedures that restrict the levying upon retirement accounts because they are specifically intended for a taxpayer's future welfare. The Internal Revenue Manual (IRM) has a three-step procedure for levying upon retirement accounts and instructs IRS employees to levy upon these accounts only if (1) a taxpayer's conduct has been flagrant[8] and (2) the taxpayer does not depend on the funds in

---

[8]Examples of flagrant conduct include, among others, (1) reliance on frivolous arguments, (2) voluntary contributions to retirement accounts when tax

(continued...)

[*23] the account to pay necessary living expenses, taking into account any special circumstances such as extraordinary expenses.[9] IRM pt. 5.11.6.2 (Dec. 2, 2011); see Wadleigh v. Commissioner, 134 T.C. 280, 294-296 (2010) (discussing the IRM provision that addresses the Commissioner's ability to levy upon retirement accounts).

Petitioners wrote "[c]ollection will cause a hardship" on their section 6330 hearing request and provided documents supporting this claim. Settlement Officer Degiovanni was aware that Mrs. Gurule and petitioners' middle son suffered from severe medical conditions that left them with high medical bills every month. Petitioners had borrowed against Mr. Gurule's section 401(k) plan account, their

---

[8](...continued)
is due, (3) conviction for tax evasion for the liability, (4) assessment of a fraud penalty with respect to the liability, and (5) a demonstrated pattern of uncooperative or unresponsive behavior. IRM pt. 5.11.6.2(6) (Dec. 2, 2011).

[9]The Commissioner's internal procedures, as reflected in the IRM, do not have the force of law, and deviation from them does not necessarily render the Commissioner's action invalid. Vallone v. Commissioner, 88 T.C. 794, 807-808 (1987). Nevertheless, the IRM can be persuasive authority, see Atchison v. Commissioner, T.C. Memo. 2009-8, and a review of relevant IRM provisions is instructive in ascertaining the procedures the IRS expects its employees to follow, see Wadleigh v. Commissioner, 134 T.C. 280, 294 & n.13 (2010) (reviewing relevant IRM provisions to determine procedures that IRS employees are expected to follow when deciding whether to levy upon a taxpayer's retirement account); see also Fairlamb v. Commissioner, T.C. Memo. 2010-22 (stating that a settlement officer's "determination * * * [that is] based wholly on misapplication of internal procedures, cannot be said to have a sound basis in law or fact").

[*24] only asset with a positive net realizable equity according to the notice of determination, to pay basic living expenses such as moving and medical expenses. Petitioners took out two of the five section 401(k) plan account loans during the course of the section 6330 hearing and promptly notified Settlement Officer Degiovanni by letter after each loan. The chronic nature of the medical conditions suggested that medical bills would continue to accumulate. Yet the notice of determination and Settlement Officer Degiovanni's case notes do not show that the Appeals Office ever considered, much less made a determination about, petitioners' economic hardship claim. The administrative record also does not show that Settlement Officer Degiovanni considered or followed the three-step process for levying upon retirement accounts pursuant to the IRM even though she was aware that petitioners were using the section 401(k) plan account to pay necessary living expenses.[10] On the basis of the record before us, we cannot determine whether Settlement Officer Degiovanni abused her discretion by

---

[10]The notice of determination does not specifically state that petitioners' sec. 401(k) plan account will be levied upon, yet this was the only asset with positive net equity listed in the notice of determination's asset equity table. Of petitioners' total calculated RCP of $16,310, only $2,052 was attributable to future income while the remaining $14,258 was attributable to petitioners' sec. 401(k) plan account.

**[*25]** upholding the proposed levy notwithstanding petitioners' economic hardship claim.

B.    Petitioners' Proposed Collection Alternatives

Assuming arguendo that petitioners' economic hardship claim does not bar collection action entirely, we address Settlement Officer Degiovanni's determination to reject petitioners' proposed collection alternatives.  Petitioners first proposed an OIC of $950 and later increased the amount to $6,100 after the Appeals Office rejected the first offer.  Petitioners also proposed an installment agreement with a payment of $120 per month.  Settlement Officer Degiovanni rejected the offers because they fell below petitioners' calculated RCP (for the OIC) and monthly net income (for the installment agreement).  Petitioners contend that the settlement officer incorrectly calculated their RCP and/or monthly net income by either (1) not reducing the section 401(k) plan account's net realizable equity by the amounts of the additional loans petitioners took out during the section 6330 hearing or (2) failing to reduce petitioners' monthly income by the amounts of the loan payments to the section 401(k) plan account.[11]  Petitioners

_____

[11]In the petition, petitioners stated that Settlement Officer Degiovanni would not allow all of their current medical expenses in the calculation of their monthly net income.  Settlement Officer Degiovanni allowed petitioners' medical expenses of $550 as stated on their Form 433-A plus an additional $76 per month on the
(continued...)

[*26] also assert that their RCP has changed since the time of the settlement officer's determination because of their middle son's death.

### 1. Collection Alternatives Generally

During the course of a section 6330 hearing taxpayers may propose collection alternatives such as an OIC or an installment agreement. Sec. 6330(c)(2)(A)(iii); Giamelli v. Commissioner, 129 T.C. 107, 112 n.3 (2007).

Pursuant to section 7122(a) the Secretary may compromise any civil or criminal case arising under the internal revenue laws before its referral to the Department of Justice. Section 7122(d) authorizes the Secretary to prescribe guidelines for officers and employees of the IRS to determine whether an OIC is adequate and should be accepted. Accordingly, we generally uphold the rejection of an OIC when the Appeals Office has followed the IRM. See, e.g., Churchill v. Commissioner, T.C. Memo. 2011-182, 102 T.C.M. (CCH) 116, 117 (2011);

---

[11](...continued)
basis of medical records they provided during the sec. 6330 hearing. Because the administrative record demonstrates that Settlement Officer Degiovanni allowed all of the medical expenses that petitioners claimed, it appears that the Appeals Office did not abuse its discretion in considering this medical expense issue. See Johnson v. Commissioner, T.C. Memo. 2007-29 (holding that the Appeals Office properly considered the taxpayer's current medical expenses in calculating RCP when it allowed the full amount of medical expenses that he had claimed), aff'd in relevant part sub nom. Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009). Petitioners conceded this issue at trial.

[*27] Atchison v. Commissioner, T.C. Memo. 2009-8, 97 T.C.M. (CCH) 1034, 1036 (2009).

Petitioners do not challenge the existence or amount of the underlying liability. Their challenge focuses on their claimed inability to pay and their difficult financial circumstances.

The Commissioner may accept an OIC of a Federal tax debt on the grounds of "Doubt as to collectibility", among others. Sec. 301.7122-1(b)(1), (2), and (3), Proced. & Admin. Regs. In making a determination regarding collectibility, the Secretary must calculate a taxpayer's ability to pay. Id. para. (c)(2). Generally, this type of OIC will be accepted only if the amount offered equals or exceeds the taxpayer's RCP; i.e., the amount that the IRS could collect through other means such as administrative and judicial collection remedies. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517; see IRM pt. 5.8.1.1.3 (Mar. 16, 2010). The IRM sets forth procedures for analyzing a taxpayer's financial condition to determine the taxpayer's RCP. See IRM pt. 5.8.5.1 (Sept. 23, 2008). A taxpayer's RCP is generally defined as the sum of (1) the taxpayer's net realizable equity in assets (net realizable equity) and (2) the amount collectible from the taxpayer's expected future income after allowing for payment of necessary living expenses. Id. pt. 5.8.4.3.1 (June 1, 2010); see sec. 301.7122-1(c)(2)(i), Proced. & Admin. Regs.

**[\*28]** (stating that the Secretary is required to "permit taxpayers to retain sufficient funds to pay basic living expenses").

Sec. 6159(a) authorizes the Secretary to enter into an installment agreement upon determining that the proposed agreement would facilitate full or partial collection of the taxpayer's liability. An installment agreement generally does not reduce the amount of taxes, interest, or penalties that the taxpayer owes but rather allows the taxpayer to pay the liability over time. See sec. 301.6159-1(c)(1)(ii), Proced. & Admin. Regs. The decision to accept or reject installment agreements lies within the discretion of the Commissioner. Thompson v. Commissioner, 140 T.C. 173, 179 (2013) (citing section 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.). If a settlement officer follows all statutory and administrative guidelines and provides a reasoned and balanced decision, the Court will not reweigh the equities. Id.; Lipson v. Commissioner, T.C. Memo. 2012-252, at \*9 (citing Fifty Below Sales & Mktg., Inc. v. United States, 497 F.3d 828, 830 (8th Cir. 2007)).

IRM pt. 5.14.1.4(4) (June 1, 2010) states: "Installment agreements must reflect taxpayers' ability to pay on a monthly basis throughout the duration of agreements." A taxpayer's ability to pay is determined by comparing his monthly income to allowable expenses. Thompson v. Commissioner, 140 T.C. at 179-180 (discussing allowable monthly expenses); Friedman v. Commissioner, T.C. Memo.

**[\*29]** 2013-44, at \*9.  In reviewing for abuse of discretion the Court ordinarily does not recalculate a taxpayer's ability to pay nor substitute its judgment for that of the settlement officer.  See, e.g., Boulware v. Commissioner, T.C. Memo. 2014-80.

> 2. Settlement Officer Degiovanni's Calculation of Petitioners' Ability To Pay

Petitioners contend that Settlement Officer Degiovanni did not properly account for Mr. Gurule's section 401(k) plan account loans in calculating their ability to pay, whether by reducing the net realizable equity of the section 401(k) plan account or by reducing their monthly net income by the amounts of the loan payments.  Respondent contends that petitioners are not entitled to any adjustment to their monthly net income because petitioners are essentially repaying a loan to themselves and allowing an adjustment would result in double counting the section 401(k) plan account encumbrances.  Respondent further avers that petitioners may not receive a reduction in the net realizable equity of the section 401(k) plan account because the additional loans Mr. Gurule took are "dissipated assets".

Initially, before Mr. Gurule took out the additional loans, Settlement Officer Degiovanni calculated the net realizable equity of Mr. Gurule's section 401(k)

[*30] plan account by reducing its cash value by encumbrances (the first two section 401(k) plan account loans) and tax consequences.  See IRM pt. 5.8.5.9 (Oct. 22, 2010).  However, Settlement Officer Degiovanni determined not to reduce the section 401(k) plan account's net realizable equity by the amounts of the two additional loans because "[w]e will not consider additional encumbrances against your 401(k), which you chose to take when you were aware that you had an outstanding tax liability."

Although the settlement officer did not further reduce the net realizable equity of the section 401(k) plan account, she allowed a $536 monthly expense for Mr. Gurule's section 401(k) plan account loan payments.  This allowance reduced petitioners' calculated monthly net income.  Respondent contends that this adjustment favored petitioners because ordinarily loan payments to a retirement account are not allowable as an expense in calculating RCP, as retirement account loan payments are essentially moving a taxpayer's money from one account to another.  See id. pt. 5.8.5.20.4(9) (Oct. 22, 2010).  However, Settlement Officer Degiovanni determined it was appropriate to include the loan payments in petitioners' RCP because the loans originated, at least in part, to pay necessary medical expenses.

[*31] According to the case activity report, Settlement Officer Degiovanni allowed petitioners a monthly expense of $536 for the loan payments on the basis of Mr. Gurule's earnings statement that petitioners provided.[12] However, the record establishes that Mr. Gurule was paid biweekly for all relevant periods. The earnings statements on which Settlement Officer Degiovanni relied reflected biweekly earnings and not monthly earnings.

In sum, after Mr. Gurule took out the third section 401(k) plan account loan, Settlement Officer Degiovanni did not adjust the net realizable equity of the section 401(k) plan account for the balance remaining on the section 401(k) plan account loans or adjust petitioners' monthly net income by the full amount of the loan payment per month. Thus, it appears that Settlement Officer Degiovanni may have made a material error in calculating petitioners' RCP.

In at least one instance, the IRM sanctions the use of an inflated RCP for public policy reasons. A dissipated asset is any asset, liquid or illiquid, that has

---

[12]Although petitioners told Settlement Officer Degiovanni that Mr. Gurule's loan payment had increased from $536 to $622 "coming out of each paycheck", she did not abuse her discretion by relying on the then-outdated earnings statement because petitioners did not provide any updated documents showing the new amount. See Etkin v. Commissioner, T.C. Memo. 2005-245 (holding that an Appeals officer did not abuse his discretion when taxpayers did not provide updated financial information showing a change in circumstances); see also Orum v. Commissioner, 123 T.C. 1, 13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005).

[*32] been sold, transferred, or spent on nonpriority items or debts so that it is no longer available to pay a tax liability. Johnson v. Commissioner, 136 T.C. 475, 487 (2011), aff'd without published opinion, 502 Fed. Appx. 1 (D.C. Cir. 2013). The IRM instructs that a dissipated asset may be included in the RCP calculation even though it is no longer at the taxpayer's disposal as a way to discourage delinquent taxpayers from squandering money instead of paying taxes. Id.; IRM pt. 5.8.5.16(3) (Oct. 22, 2010); see, e.g., Tucker v. Commissioner, 676 F.3d 1129, 1135 (D.C. Cir. 2012), aff'g 135 T.C. 114 (2010), and aff'g T.C. Memo. 2011-67. Settlement Officer Degiovanni's case notes indicate that she did not reduce petitioners' calculated RCP by the total amount of the additional section 401(k) plan account loans because she considered that amount to be a dissipated asset.

The IRM states that dissipated assets should not automatically be included in the RCP calculation. See IRM pt. 5.8.5.16(1); id. pt. 8.23.3.3.2.3(2) (Oct. 14, 2011). The IRM lists factors that the Appeals Office should analyze when deciding whether to include dissipated assets in the RCP calculation.[13] The IRM

---

[13]The factors to be evaluated are (1) when the assets were dissipated in relation to the offer submission, (2) whether the assets were used to pay for existing ongoing business operating expenses, (3) when the assets were dissipated in relation to the liability, (4) how the assets were transferred, (5) whether the taxpayer realized any funds from the transfer of assets, (6) how any funds realized from the disposition of assets were used, and (7) the value of the assets and the

(continued...)

[*33] also states: "When it can be shown through internal research or substantiation provided by the taxpayer that the funds were needed to provide for necessary living expenses, these amounts should not be included in the RCP calculation." Id. pt. 5.8.5.16(5); see also Layton v. Commissioner, T.C. Memo. 2011-194; IRM pt. 8.23.3.3.2.3(5). Further, "[i]nclusion of the value of dissipated assets must clearly be justified in the case file and documented on the ICS or AOIC history, as appropriate."[14] IRM pt. 5.8.5.16(4), (10).

The administrative record does not establish that Mr. Gurule took out the additional section 401(k) plan account loans intending to disregard the outstanding tax liability, see IRM pt. 5.8.5.16(7), or that the loans otherwise qualify as dissipated assets that should be included in the RCP calculation. In any event, Settlement Officer Degiovanni's decision to treat the additional loan encumbrance

---

[13](...continued)
taxpayer's interest in those assets. IRM pt. 5.8.5.16(4) (Oct. 22, 2010).

[14]The IRM instructs the Appeals Office to consider, but does not mandate, including dissipated assets in the RCP calculation when an investigation clearly reveals that assets have been dissipated with a disregard of the outstanding tax liability. IRM pt. 5.8.5.16(7); see also Tucker v. Commissioner, 676 F.3d 1129, 1135-1136 (D.C. Cir. 2012), aff'g 135 T.C. 114 (2010), and aff'g T.C. Memo. 2011-67. Examples of when dissipated assets may result in an RCP increase include dissolving an IRA account to pay for a child's wedding or a vacation and selling real estate and gifting the proceeds to family members. IRM pt. 5.8.5.16(7), ex. 1.

**[\*34]** as a dissipated asset was not clearly justified in the case file. Settlement Officer Degiovanni included the purported dissipated asset in the RCP calculation, but it is unclear to what extent she considered petitioners' unique circumstances or any of the factors that the IRM instructs the Appeals Office to consider. See id. pt. 5.8.5.16(1) ("The value of dissipated assets should not automatically be included in the calculation of the RCP. Each particular case must be evaluated on its own merit."); id. pt. 5.8.5.16(4); see also Titsworth v. Commissioner, T.C. Memo. 2012-12, slip op. at 18-19 ("Whether to include dissipated assets in a taxpayer's RCP is not an automatic determination but must be evaluated on the basis of the facts and circumstances of each case in the light of certain enumerated factors [in the IRM]."). The case activity report and the notice of determination summarily state that this amount is included in the RCP calculation because Mr. Gurule took out the loans when petitioners knew of their outstanding Federal tax liability. Especially considering that the subsequent loans appear to have been used to pay necessary living expenses, we cannot properly review Settlement Officer Degiovanni's conclusion and evaluate its impact on the Appeals Office's determination with the cursory explanation in the administrative record. See IRM pt. 5.8.5.16(4) and (5); see also Jones v. Commissioner, T.C. Memo. 2012-274, at \*32; Tucker v. Commissioner, T.C. Memo. 2011-67 (holding that the RCP

[*35] calculation should not include the entire amount the taxpayer placed in his day trading account as a dissipated asset if he later withdrew half the amount to pay for basic living expenses).

Because the administrative record does not fully and clearly explain Settlement Officer Degiovanni's treatment of the additional section 401(k) plan account loans, we cannot determine whether she calculated petitioners' RCP correctly at the time of the section 6330 hearing. Moreover, Settlement Officer Degiovanni's calculation of petitioners' ability to pay also affected her determination to reject petitioners' proposed installment agreement with a payment of $120 per month. See IRM pt. 5.14.1.4(4). Although we do not substitute our judgment for that of the Appeals Office in calculating a taxpayer's ability to pay when the Appeals Office rejects an installment agreement, see, e.g., Boulware v. Commissioner, T.C. Memo. 2014-80, we can consider whether the Appeals Office's decision to reject an installment agreement was the result of a failure to properly consider the taxpayers' financial information in the record. Because the record does not permit us to do so, a remand is appropriate.

A remand may also be appropriate when a taxpayer has experienced a material change in circumstances between the time of the section 6330 hearing and the trial that affects the RCP calculation. Leago v. Commissioner, T.C. Memo.

[*36] 2012-39; Churchill v. Commissioner, T.C. Memo. 2011-182 (remanding to the Appeals Office when the taxpayer's RCP had changed as a result of his divorce); see INS v. Ventura, 537 U.S. 12, 14-18 (2002); SKF USA, Inc. v. United States, 254 F.3d 1022, 1028 (Fed. Cir. 2001); Harrell v. Commissioner, T.C. Memo. 2003-271 (remanding when a Supreme Court case decided after the notice of determination resolved a relevant question about equitable tolling). Petitioners' middle son passed away in August 2013 after the notice of determination was issued. This tragic event constitutes a material change of circumstances for petitioners, who had to take out a fifth section 401(k) plan account loan to pay his final expenses and who are still unable to pay for the placement of his ashes in a mausoleum. These additional costs could have affected petitioners' RCP and their ability to pay their tax liability. On remand the Appeals Office is directed to consider updated financial information that petitioners should provide to document any change in their ability to pay resulting from their middle son's death.

### 3. Special Circumstances

The IRS may accept an OIC on the basis of doubt as to collectibility when the offer is less than the RCP if there are "special circumstances". Rev. Proc. 2003-71, sec. 4.02(2); see Fairlamb v. Commissioner, T.C. Memo. 2010-22. For

**[*37]** this purpose, special circumstances are: (1) circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the RCP and (2) compelling public policy or equity considerations that provide sufficient basis for compromise. See Murphy v. Commissioner, 125 T.C. at 309; McClanahan v. Commissioner, T.C. Memo. 2008-161; IRM pt. 5.8.4.2(4) (June 1, 2010) (stating that the factors establishing special circumstances for doubt as to collectibility are the same as those considered under effective tax administration); IRM pt. 5.8.11.2(2)(b) (Sept. 23, 2008). Factors indicating economic hardship include, but are not limited to, (1) the taxpayer's long-term illness, medical condition, or disability that renders him incapable of earning a living, where it is "reasonably foreseeable that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition"; (2) the taxpayer's monthly income is exhausted each month in providing for care of dependents without other means of support; and (3) the taxpayer is unable to borrow against the equity in assets and liquidation of those assets to pay a tax liability would render the taxpayer unable to meet basic living expenses. Sec. 301.7122-1(c)(3)(i), Proced. & Admin. Regs.; IRM pt. 5.8.11.2.1(6) (Sept. 23, 2008).

[*38] Our analysis here closely tracks our analysis of petitioners' economic hardship claim supra. The record does not show whether Settlement Officer Degiovanni considered accepting petitioners' OIC on the basis of doubt as to collectibility with special circumstances. See IRM pt. 5.8.11.4(2) (Sept. 23, 2008) (instructing IRS employees to consider a taxpayer's OIC under doubt as to collectibility with special circumstances when the taxpayer's RCP does not exceed the tax liability and special circumstances exist). The notice of determination states: "The IRS cannot compromise tax liabilities for less than the amount determined to be reasonably collectible. Your Offer in Compromise was rejected." Settlement Officer Degiovanni knew that Mrs. Gurule could not work because of her neurological condition, and she also knew that Mr. Gurule had to take several section 401(k) plan account loans to pay their son's medical expenses and other basic living expenses. Even though Mr. Gurule had positive net realizable equity in his section 401(k) plan account at that time, it was quickly being depleted to pay basic expenses. Yet the notice of determination suggests that the Appeals Office rejected petitioners' OIC pro forma because the offer fell below the calculated RCP. We cannot determine whether the Appeals Office gave due regard to potential special circumstances before rejecting the offer. See Anderson v. Commssioner, T.C. Memo. 2013-261 (remanding when it was unclear whether

[*39] the settlement officer properly considered the taxpayer's health in rejecting the taxpayer's OIC with special circumstances); Leago v. Commissioner, T.C. Memo. 2012-39 (same); see also Antioco v. Commissioner, T.C. Memo. 2013-35 (remanding when the settlement officer did not meaningfully consider the taxpayer's special circumstances before rejecting her proposed installment agreement).

IV.   Conclusion

In the light of the inadequacy of the administrative record and the reasons stated for rejecting petitioners' proposed collection alternatives, we are unable to conclude whether it was an abuse of discretion for respondent to determine to proceed with the proposed collection action for petitioners' 2009 tax liability. Because a remand would be "helpful", "necessary", or "productive", see Kelby v. Commissioner, 130 T.C. 79, 86 n.4 (2008); Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Churchill v. Commissioner, T.C. Memo. 2011-182, we will remand the case to the Appeals Office for further consideration and clarification. Upon remand the Appeals Office shall consider any additional information or evidence that petitioners may wish to submit, any new collection alternative that petitioners may wish to propose, and any asserted change in circumstances.

**[\*40]** We have considered the parties' remaining arguments and, to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.  For the reasons identified above, we will remand this case to the Appeals Office for further proceedings consistent with this opinion.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.