KEVIN R. GURULE AND DAWN M. GURULE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Gurule v. Comm'r
Docket No. 13323-13L United States Tax Court
2015 Tax Ct. Memo LEXIS 81; March 31, 2015, Filed
Decision text below is the first available text from the court; it has not been editorially reviewed by LexisNexis. Publisher's editorial review, including Headnotes, Case Summary, Shepard's analysis or any amendments will be added in accordance with LexisNexis editorial guidelines.
*81 Docket No. 13323-13L. Filed March 31, 2015.
Kevin R. Gurule and Dawn M. Gurule, pro sese.
John Schmittdiel and Jeremy J. Eggerth, for respondent.
MEMORANDUM FINDINGS OF FACT AND OPINION
MARVEL, Judge: In a Notice of Determination Concerning Collection
Action(s) Under Section 6320 and/or 63301 (notice of determination), respondent
1Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.
- 2 -
[*2] sustained the proposed collection by levy of petitioners' unpaid Federal
income tax for taxable year 2009. The issue for decision is whether respondent
abused his discretion in sustaining the proposed levy. Because we are unable to
determine on the record before us whether respondent abused his discretion, we
will remand to the Internal Revenue Service (IRS) Appeals Office for further
proceedings.
FINDINGS OF FACT
Some of the facts have been stipulated and are so found. The stipulated
facts and facts drawn from stipulated exhibits are incorporated herein by this
reference. Petitioners resided in Minnesota when they petitioned this Court.
I. Background
Petitioners are *82 husband and wife. Mr. Gurule has an associate's degree in
aviation electronics and a bachelor's degree in business management. He worked
for General Mills for 18 years, beginning as a technician and then moving up in
the company. His job required him to move several times, most recently from
Minnesota to Missouri in 2009. Each time his family moved with him. Mr.
Gurule lost his job three months after petitioners moved to Missouri. The family
moved back to Minnesota, and after four to five months of unemployment Mr.
- 3 -
[*3] Gurule found a job at the manufacturing facility of a grocery chain. He was
working there on the date of the trial in this case.
Mrs. Gurule has a severe neurological condition that causes her to suffer
seizures and has prevented her from working. She has had brain surgery, takes
medication, and has many doctor visits per year because of her medical condition.
Petitioners' middle and youngest sons continued to reside with them
throughout the various moves. Their middle son was in an accident as a child and
suffered a brain injury. He had medical problems throughout his life as a result of
the injury. Tragically, petitioners' middle son passed away in August 2013 from
these medical *83 problems. Petitioners have not yet been able to place his ashes in a
mausoleum because doing so would cost between $7,000 and $10,000 and they are
unable to pay the cost.
Petitioners owned a home in Minnesota. When they moved to Missouri in
2009, they put the Minnesota home up for sale and were in the process of buying a
house in Missouri. Mr. Gurule took distributions from a section 401(k) plan
account he maintained with Great West Retirement for the downpayment, but
petitioners were not able to purchase the house after Mr. Gurule lost his job. The
section 401(k) plan account distributions generated the underlying tax liability in
this case. After petitioners moved back to Minnesota, they lived in the Minnesota
- 4 -
[*4] house until December 2012. At that time the mortgage on petitioners'
Minnesota home was the subject of a foreclosure proceeding, and they moved.
Mr. Gurule had two loans from his section 401(k) plan account outstanding
at the time of the foreclosure. In January 2013 Mr. Gurule took out another loan
from his section 401(k) plan account (third section 401(k) plan account loan)
because petitioners had unexpected expenses after the foreclosure, including
moving expenses, a security deposit, and the first month's rent for a new
residence. Mr. Gurule's earnings *84 statements from 2012 show that amounts
between $332.88 and $403.56 were deducted from his biweekly paycheck to pay
back the first two section 401(k) plan account loans. The third section 401(k) plan
account loan increased his biweekly payroll deduction to $536.24.2 In or around
March 2013 Mr. Gurule obtained funds to pay petitioners' son's medical expenses
by taking out another section 401(k) plan account loan (fourth section 401(k) plan
account loan). This increased Mr. Gurule's biweekly payroll deduction to $622.3
2In a letter to respondent Mr. Gurule stated that the third sec. 401(k) plan account loan increased his payroll deduction to "$536.24 per month coming out of each paycheck." This statement appears to have been incorrect because, as petitioners' Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Mr. Gurule's earnings statements in the administrative record show, he was paid biweekly.
3In a letter to respondent Mr. Gurule stated that the fourth sec. 401(k) plan (continued...)
- 5 -
[*5] After petitioners' middle son passed away in August 2013, Mr. Gurule took
out a fifth section 401(k) plan account loan (fifth section 401(k) plan account
loan) to pay for his son's funeral services. Mr. Gurule's earnings statements for
February 2014 show that this *85 additional loan increased the biweekly payroll
deduction to $694.70.
II. The Liability and the Collection Process
Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax
Return, for taxable year 2009. On May 2, 2011, respondent sent a Notice CP2000
to petitioners proposing adjustments to their 2009 Federal income tax on the basis
of third-party information returns showing that Mr. Gurule had section 401(k) plan
account distributions during the year. The record is unclear as to whether
respondent sent petitioners a statutory notice of deficiency as required under
section 6213(a). In November 2011 respondent assessed additional tax of $36,516
and an accuracy-related penalty of $6,756. Petitioners did not pay the assessed
amounts, and respondent's Automated Collection System Section issued a Letter
3(...continued)
account loan increased the repayment to "$622.00 per month coming out of each paycheck". This statement is incorrect because Mr. Gurule was paid biweekly. See supra note 2.
- 6 -
[*6] 1058, Notice of Intent to Levy and Notice of Your Right to a Hearing, on
May 7, 2012.4
Petitioners timely requested a section 6330 hearing. In their request, they
indicated that they could not pay the balance and stated: "Collection will *86 cause a
hardship. I need an offer in compromise or installment agreement, penalties
should be cancelled for reasonable cause."
Petitioners' case was assigned to Settlement Officer Lori Degiovanni in the
IRS Appeals Office. On August 21, 2012, petitioners submitted to Settlement
Officer Degiovanni a Form 656, Offer in Compromise, a Form 433-A, and
supporting financial information. The offer-in-compromise (OIC) request, in
which petitioners proposed to settle their tax liability for $950 paid over five
months, was based on doubt as to collectibility.
The Appeals Office retained jurisdiction over the case while the IRS'
Centralized Offer in Compromise (COIC) Unit researched petitioners' OIC request
and verified their financial information. By letter dated November 28, 2012, the
COIC Unit informed petitioners that it could not accept the proposed OIC but
indicated a willingness to receive additional information. In response, petitioners
4The Letter 1058 also stated that petitioners were liable for an addition to tax for late payment pursuant to sec. 6651(a)(3).
- 7 -
[*7] sent the COIC Unit a letter dated January 9, 2013, and financial
documentation. The letter explained the family's medical problems, the
foreclosure *87 proceedings, and the third section 401(k) plan account loan. The
mortgage on the Minnesota house was foreclosed upon and Mr. Gurule had taken
out the third section 401(k) plan account loan after petitioners submitted their
OIC. The financial information petitioners sent included documentation of the
moving expenses and the medical expenses.
On January 29, 2013, the COIC Unit preliminarily rejected petitioners'
proposed OIC because it contended that petitioners could fully pay the liability on
the basis of their calculated net realizable equity and future income.5 The COIC
Unit determined petitioners' net realizable equity to be $19,342.80, which it
computed by adding the total value of petitioners' bank account balance of $1,700,
Mr. Gurule's section 401(k) plan account net realizable equity of $16,442.80, and
vehicle net realizable equity of $1,200. The COIC Unit calculated the net
5The term "net realizable equity" is defined as "quick sale value * * * less amounts owed to secured lien holders with priority over the [F]ederal tax lien". Internal Revenue Manual (IRM) pt. 5.8.5.4.1(1) (Oct. 22, 2010). The term "quick sale value" used in the definition of "net realizable equity" is defined to mean "an estimate of the price a seller could *88 get for the asset in a situation where financial pressures motivate the owner to sell in a short period of time", usually 80% of the fair market value of the asset. Id. pt. 5.8.5.4.1(2) and (3); see Lane v.Commissioner, T.C. Memo. 2013-121.
- 8 -
[*8] realizable equity of Mr. Gurule's section 401(k) plan account by reducing the
fair market value of $71,704 by 30% to account for Federal income tax and then
subtracting a loan balance of $33,750. The COIC Unit did not consider Mr.
Gurule's then-existing third section 401(k) plan account loan in calculating the
section 401(k) plan account's net realizable equity.
The COIC Unit determined petitioners' monthly gross income, monthly
expenses, and monthly net income to be $8,663, $8,225, and $438, respectively.
On the basis of petitioners' net realizable equity of $19,342.80 and monthly net
income of $438 over 110 months, the COIC Unit determined that petitioners could
fully satisfy their tax liability, which then totaled $46,657.77.
The COIC Unit then transferred the OIC case file to the Appeals Office for
a final determination. After receiving the case file, Settlement Officer Degiovanni
prepared an asset equity table and an income and expense table, which showed the
following: - 9 - [*9]Asset Equity Table1 Fair market Percent Quick *89 sale Appeals AssetvaluereducedvalueEncumbrancesequity Checking acct. $1,700 -0- -0- -0- -0- Sec. 401(k) plan acct. 269,079 3-0- $48,355 $34,097 $14,258 Vehicle 1 1,500 20% 1,200 -0- -0- Total 14,258 1Categories without a value in any column have been omitted.
2The record does not explain why the COIC Unit and Settlement Officer Degiovanni assigned a different fair market value to Mr. Gurule's sec. 401(k) plan account. The notice of determination makes clear that the difference was not a result of Settlement Officer Degiovanni's taking the third sec. 401(k) plan account loan into consideration. See infra pp. 30-31.
3Though Settlement Officer Degiovanni's chart shows 0% reduced, the quick sale value implies that she reduced the fair market value of the sec. 401(k) plan account by 30%.
Income Table
ItemClaimed1 Appeals Gross wages $6,694 $8,202 Social Security -0- 459 Total 6,694 8,661 1This column reflects the income that petitioners claimed on their Form 433-A. - 10 - [*10]Expense Table
ExpenseClaimed1 Appeals National standard $1,021 $1,450 Housing and utilities 2,197 2,581 Vehicle ownership 420 409 Vehicle operating 632 432 Taxes (on income) 1,427 1,427 Health insurance 287 287 Out-of-pocket health care 550 550 *90 Life insurance 130 130 Other secured debt -0- -0- Additional vehicle operating -0- 400 Total 26,664 7,666 1This column reflects the expenses that petitioners claimed on their Form 433-A.
2Petitioners' Form 433-A incorrectly stated that the expenses totaled $6,644. The correct total is $6,664.
Settlement Officer Degiovanni did not allow a monthly expense for Mr. Gurule's
payroll deduction related to the section 401(k) plan account loans at that time.
On the basis of these calculations, Settlement Officer Degiovanni found that
petitioners had monthly disposable income and a reasonable collection potential6
(RCP) of $995 and $26,198, respectively, and she therefore preliminarily
determined that petitioners would be able to pay the tax liability in full. On March
6Reasonable collection potential is generally the sum of a taxpayer's net realizable equity and future income. IRM pt. 5.8.4.3.1 (June 1, 2010); see infra pp. 27-28.
- 11 -
[*11] 1, 2013, Settlement Officer Degiovanni sent petitioners a letter explaining
her preliminary determination and scheduling a telephone call for April 9, 2013.
The letter also stated that petitioners could provide additional information by
March 22, 2013.
In response to the letter, petitioners *91 sent Settlement Officer Degiovanni
additional financial information, including a pay stub, rent checks, utility bills, and
medical bills. Mr. Gurule also included a letter explaining certain housing and
vehicle expenses and the fourth section 401(k) plan account loan. Although he
stated in the letter that the fourth section 401(k) plan account loan had increased
his payroll deduction to $622, petitioners did not provide an updated earnings
statement to this effect. The pay stub that petitioners sent was current as of
February 2013 and reflected only the first three section 401(k) plan account loans.
Mr. Gurule and Settlement Officer Degiovanni spoke on the telephone on
April 11, 2013. Following the telephone call, Settlement Officer Degiovanni
recalculated petitioners' expenses as follows: - 12 - [*12] ExpenseClaimed1 Appeals National standard $1,021 $1,465 Housing and utilities 3,051 2,778 Vehicle ownership 420 409 Vehicle operating 632 432 Taxes (on income) 1,427 1,427 Health insurance 287 2287 Out-of-pocket health care 550 3626 Life insurance 130 130 Other secured debt -0- -0- Additional vehicle operating -0- 400 Sec. 401(k) plan acct. loan 622 536 Total 46,664 8,490 1This column reflects the expenses that petitioners claimed *92 during the sec. 6330 hearing.
2Although Mr. Gurule stated that his taxes and medical insurance costs had increased, Settlement Officer Degiovanni did not adjust these amounts because she determined that the difference was netted out by increased wages and smaller contributions to a healthcare flexible spending account.
3Settlement Officer Degiovanni increased petitioners' allowable medical expenses to $626 per month, which she calculated by totaling all of the medical bills in the record and dividing by 15 months.
4Settlement Officer Degiovanni's calculations and the notice of determination show an incorrect total of $6,664. The correct total is $8,140.
As the table above reflects, Settlement Officer Degiovanni included a part
of Mr. Gurule's payroll deduction for the section 401(k) plan account loans as an
expense when she recalculated petitioners' expenses. She allowed a $536 monthly
expense for the section 401(k) plan account loans because Mr. Gurule's most
- 13 -
[*13] recent earnings statement "shows $536 being deducted". Mr. Gurule was
paid biweekly, but Settlement Officer Degiovanni allowed only $536 as Mr.
Gurule's monthly expense for the section 401(k) plan account loans.
Settlement Officer Degiovanni did not reduce the net realizable *93 equity in
Mr. Gurule's section 401(k) plan account by the amount of the third or fourth
section 401(k) plan account loan. As the case activity record explains, because
petitioners "chose to borrow an additional amount against the equity in the IRA,
knowing that they owed [F]ederal taxes, we will not now consider the additional
loan encumbrance when figuring RCP. This could also be considered a dissipated
asset." We construe this statement to mean that Settlement Officer Degiovanni
considered the additional loan amounts to be dissipated assets.
On the basis of these adjustments, Settlement Officer Degiovanni
determined that petitioners' RCP was $16,310 and their monthly net income was
$171. She therefore rejected petitioners' proposed OIC of $950. She offered
petitioners the choice of either increasing their OIC or accepting an installment
agreement with a payment of $171 per month and the filing of a notice of Federal
tax lien. She also informed petitioners that they did not meet the requirements for
currently not collectible status.
- 14 -
[*14] On April 18, 2013, Mr. Gurule called Settlement Officer Degiovanni to
propose an installment agreement with a payment of $120 per month. Petitioners
felt this was the maximum they could *94 pay because this was the amount left in their
bank account at the end of each month. Settlement Officer Degiovanni did not
accept this amount because her financial analysis showed monthly net income of
$171. Petitioners alternatively offered to increase their OIC to $6,100. Settlement
Officer Degiovanni did not accept this offer because she determined that
petitioners' RCP exceeded this amount.
Respondent sent petitioners a notice of determination on May 13, 2013,
sustaining the proposed levy. The notice of determination explained the Appeals
Office's final calculations of petitioners' net realizable equity, monthly income
and expenses, and RCP. The notice of determination further stated: "We will not
consider additional encumbrances against your 401(k), which you chose to take
when you were aware that you had an outstanding tax liability."
Because petitioners' two OIC proposals were below the calculated RCP, the
notice of determination sustained the proposed collection action by levy. The
notice of determination also stated that the applicable law, regulations, and
procedures had been followed and that the Appeals Office balanced the need for
efficient collection with petitioners' concern that the *95 collection action be no more
- 15 -
[*15] intrusive than necessary. However, the notice of determination did not
address petitioners' claim of financial hardship, which they brought to the
attention of the Appeals Office with their section 6330 hearing request.
Settlement Officer Degiovanni's case activity report likewise does not mention the
financial hardship claim.
Petitioners timely filed a petition disputing the notice of determination on
June 12, 2013.7 After the filing of the petition, petitioners' middle son passed
away, and Mr. Gurule took out the fifth section 401(k) plan account loan to pay
for the funeral services.
On March 11, 2014, petitioners sent respondent an updated but unsigned
Form 433-A showing increased expenses that exceeded their monthly income by
$250. Petitioners also sent respondent a printout that shows, as of April 8, 2014,
that Mr. Gurule was eligible to take out an additional $4,753.33 from his section
401(k) plan account as a loan. If he took out an additional loan from the section
7Petitioners initially elected to have this case treated under small tax case procedures. Seesec. 7463(f)(2). Before trial respondent requested by oral motion that the "S" designation be removed because, at the time the notice *96 of determination was issued, petitioners' total balance slightly exceeded the $50,000 cap on small tax cases. Seesec. 7463(a)(1), (d); Leahy v. Commissioner, 129 T.C. 71, 76 (2007). The Court granted respondent's oral motion.
- 16 -
[*16] 401(k) plan account in this amount, his biweekly loan repayment would
increase to $816.67.
OPINION
I. Section 6330 Hearing
Under section 6331(a), the Secretary may levy upon property and property
rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days
after notice and demand for payment. Section 6330(a) provides that no levy may
be made on any property or right to property of any person unless the Secretary
has notified such person in writing of the right to a hearing before the levy is
made. Section 6330(a) and (b) and section 6331(d) provide that the Secretary
must give at least 30 days' written notice to the taxpayer of his intent to levy and
must send the taxpayer written notice of the taxpayer's right to a hearing before
the IRS Appeals Office at least 30 days before any levy begins.
If a taxpayer requests a hearing in response to a notice of intent to levy
pursuant to section 6330, a hearing shall be held before an impartial officer or
employee of the Appeals Office. Sec. 6330(b)(1), (3). At the hearing the taxpayer
may raise any relevant issue, including appropriate spousal defenses, challenges *97 to
the appropriateness of the collection action, and collection alternatives. Sec.
6330(c)(2)(A). A taxpayer is precluded from contesting the existence or amount
- 17 -
[*17] of the underlying tax liability unless the taxpayer did not receive a notice of
deficiency for the liability in question or did not otherwise have an opportunity to
dispute the liability. Sec. 6330(c)(2)(B); see Sego v. Commissioner, 114 T.C. 604,
609 (2000). The phrase "underlying tax liability" includes the tax deficiency,
additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339
(2000).
In determining whether to sustain the proposed collection action, the
settlement officer must take into account verification of the Secretary's
compliance with "the requirements of any applicable law or administrative
procedure", the issues that the taxpayer raised at the hearing, and whether the
collection action "balances the need for the efficient collection of taxes with the
legitimate concern of the * * * [taxpayer] that any collection action be no more
intrusive than necessary." Sec. 6330(c)(1), (3); e.g., Goza v. Commissioner, 114
T.C. 176, 180-181 (2000). The Court has jurisdiction to review this
determination. Sec. 6330(d)(1); e.g., Sego v. Commissioner, 114 T.C. at 609.
Where the underlying tax liability is properly at issue, the Court reviews the
determination de novo. *98 E.g., Goza v. Commissioner, 114 T.C. at 181-182. Where
the validity of the underlying tax is not properly at issue, the Court reviews the
Commissioner's determination for abuse of discretion. E.g., Sego v.
- 18 -
[*18]Commissioner, 114 T.C. at 610. The Appeals Office abuses its discretion
when its exercise of discretion is arbitrary, capricious, or without sound basis in
fact or law. Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), aff'd, 469
F.3d 27 (1st Cir. 2006); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).
II. Section 6330(c)(1) Requirements
Pursuant to section 6330(c)(1), the settlement officer shall "obtain
verification from the Secretary that the requirements of any applicable law or
administrative procedure have been met." When the IRS has assessed additional
tax from its determination of a deficiency in the income tax that married taxpayers
reported on a joint return, the settlement officer must verify each of the following:
(1) either that the Commissioner mailed a valid notice of deficiency to the
taxpayers at their last known address (or addresses) or each spouse signed an
appropriate waiver, secs. 6212(b), 6213; (2) that the Commissioner made a valid
assessment, sec. 6203; (3) that the Commissioner issued notice and demand, sec.
6303; (4) that the taxpayers did not pay the liability, sec. 6331(a); and (5) that the
Commissioner issued to the taxpayers notice of intent to collect the outstanding
liability by levy and *99 of the taxpayers' right to a hearing, sec. 6330(a); see Ron
Lykins, Inc. v. Commissioner, 133 T.C. 87, 96-97 (2009); Manko v.
- 19 -
[*19]Commissioner, 126 T.C. 195, 203 (2006); Freije v. Commissioner, 125 T.C.
14, 35 (2005); Marlow v. Commissioner, T.C. Memo. 2010-113.
The settlement officer must verify that these requirements have been
satisfied. Sec. 6330(c)(1), (3)(A); Hoyle v. Commissioner, 131 T.C. 197, 201-202
(2008), supplemented by136 T.C. 463 (2011). If they have not, collection cannot
proceed and the settlement officer cannot sustain the proposed collection action.
See Med. Practice Solutions, LLC v. Commissioner, T.C. Memo. 2009-214. The
Court reviews the Appeals Office's verification under section 6330(c)(1) without
regard to whether the taxpayers raised these issues during the section 6330
hearing. Hoyle v. Commissioner, 131 T.C. at 202-203.
The IRS was required to send Mr. and Mrs. Gurule a notice of deficiency
before assessing tax. Seesec. 6213(a); see also Commissioner v. Shapiro, 424
U.S. 614, 616-617 (1976); Manko v. Commissioner, 126 T.C. at 200-201; Freije v.
Commissioner, 125 T.C. at 34-37. However, a copy of a notice of deficiency is
not in the record. The notice of determination does not say that the Appeals Office
verified the mailing of a notice of deficiency. This is especially worrisome
because the notice of determination specifically states that the settlement officer
verified each of the other statutory requirements. Settlement Officer Degiovanni's
case activity record states that she verified that the Letter 1058 was sent to
- 20 -
[*20] petitioners and other procedural requirements were satisfied, but it does not
indicate *100 that she verified that an appropriate notice of deficiency was mailed to
petitioners at their last known address.
The only possible reference to a notice of deficiency appears in the case
history transcript, which has an entry for a "STAT NOTICE" on August 1, 2011.
The case history transcript does not indicate when, if ever, the Commissioner
mailed this notice to petitioners. Because multiple notices required by applicable
Code provisions and related regulations must be sent to taxpayers before and
during the collection process, the Court cannot tell whether the "STAT NOTICE"
entry refers to the mailing of a notice of deficiency. On the basis of the limited
record before us, the Court cannot determine whether Settlement Officer
Degiovanni verified that the IRS properly mailed a notice of deficiency to
petitioners. We may remand when the Appeals officer did not develop a record
sufficient for judicial review. See Hoyle v. Commissioner, 131 T.C. at 204-205;
Churchill v. Commissioner, T.C. Memo. 2011-182. Accordingly, we will remand
this case to the Appeals Office for it to clarify the record as to whether it verified
that a notice of deficiency was properly sent to petitioners at their last known
address and, if so, on what it relied to do so.
- 21 -
[*21]III.Section 6330(c)(2) Requirements
Once the settlement *101 officer verifies that the applicable law and
administrative procedures have been followed, the settlement officer must
consider any relevant issue that the taxpayer has raised relating to the unpaid tax
or the proposed levy. Sec. 6330(c)(2); see Sego v. Commissioner, 114 T.C. at
608-609. Petitioners argue that Settlement Officer Degiovanni did not properly
address the issues they raised in the section 6330 hearing. We cannot determine
on the basis of the record before us whether the settlement officer properly
considered the issues petitioners raised in the section 6330 hearing.
A. Economic Hardship and Necessary Living Expenses
Petitioners assert that the proposed collection action should not proceed
because they are experiencing economic hardship and the equity in their only
meaningful asset, Mr. Gurule's section 401(k) plan account, is needed as a source
for loans to pay necessary living expenses. Section 6343(a)(1)(D) directs the
Commissioner to release a levy upon all, or part of, a taxpayer's property if he
determines that a levy would cause economic hardship to the taxpayer. A levy
causes "economic hardship" when the taxpayer would be unable to pay reasonable
basic living expenses, according to the taxpayer's complete and current financial
information, if a levy were *102 made. Washington v. Commissioner, 120 T.C. 137,
- 22 -
[*22] 149-150 (2003); sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; seesec.
301.6343-1(b)(4)(ii), Proced. & Admin. Regs. (outlining what constitutes basic
living expenses and including any "factor that the taxpayer claims bears on
economic hardship and brings to the attention of the director"). By extension, the
settlement officer in a section 6330 hearing may not proceed with a proposed levy
when a taxpayer establishes that it would create an economic hardship because
section 6343 would require the levy's immediate release. Vinatieri v.
Commissioner, 133 T.C. 392, 400, 402 (2009) ("Proceeding with the levy would
be unreasonable because section 6343 would require its immediate release, and the
determination to do so was arbitrary."). Instead, the settlement officer "must
consider an alternative." Id. at 401.
Beyond this statutory requirement, the IRS has implemented its own
procedures that restrict the levying upon retirement accounts because they are
specifically intended for a taxpayer's future welfare. The Internal Revenue
Manual (IRM) has a three-step procedure for levying upon retirement accounts
and instructs IRS employees to levy upon these accounts only if (1) a taxpayer's
conduct has been flagrant8 and (2) the taxpayer does not depend on the funds in
8Examples of flagrant conduct *103 include, among others, (1) reliance on frivolous arguments, (2) voluntary contributions to retirement accounts when tax
(continued...)
- 23 -
[*23] the account to pay necessary living expenses, taking into account any special
circumstances such as extraordinary expenses.9 IRM pt. 5.11.6.2 (Dec. 2, 2011);
see Wadleigh v. Commissioner, 134 T.C. 280, 294-296 (2010) (discussing the
IRM provision that addresses the Commissioner's ability to levy upon retirement
accounts).
Petitioners wrote "[c]ollection will cause a hardship" on their section 6330
hearing request and provided documents supporting this claim. Settlement Officer
Degiovanni was aware that Mrs. Gurule and petitioners' middle son suffered from
severe medical conditions that left them with high medical bills every month.
Petitioners had borrowed against Mr. Gurule's section 401(k) plan account, their
8(...continued)
is due, (3) conviction for tax evasion for the liability, (4) assessment of a fraud penalty with respect to the liability, and (5) a demonstrated pattern of uncooperative or unresponsive behavior. IRM pt. 5.11.6.2(6) (Dec. 2, 2011).
9The Commissioner's internal procedures, as reflected in the IRM, do not have the force of law, and deviation from them does not necessarily render the Commissioner's action invalid. *104 Vallone v. Commissioner, 88 T.C. 794, 807-808 (1987). Nevertheless, the IRM can be persuasive authority, see Atchison v.Commissioner, T.C. Memo. 2009-8, and a review of relevant IRM provisions is instructive in ascertaining the procedures the IRS expects its employees to follow, see Wadleigh v. Commissioner, 134 T.C. 280, 294 & n.13 (2010) (reviewing relevant IRM provisions to determine procedures that IRS employees are expected to follow when deciding whether to levy upon a taxpayer's retirement account); see also Fairlamb v. Commissioner, T.C. Memo. 2010-22 (stating that a settlement officer's "determination * * * [that is] based wholly on misapplication of internal procedures, cannot be said to have a sound basis in law or fact").
- 24 -
[*24] only asset with a positive net realizable equity according to the notice of
determination, to pay basic living expenses such as moving and medical expenses.
Petitioners took out two of the five section 401(k) plan account loans during the
course of the section 6330 hearing and promptly notified Settlement Officer
Degiovanni by letter after each loan. The chronic nature of the medical conditions
suggested that medical bills would continue to accumulate. Yet the notice of
determination and Settlement Officer Degiovanni's case notes do not show that
the Appeals Office ever considered, much less made a determination about,
petitioners' economic hardship claim. The administrative *105 record also does not
show that Settlement Officer Degiovanni considered or followed the three-step
process for levying upon retirement accounts pursuant to the IRM even though she
was aware that petitioners were using the section 401(k) plan account to pay
necessary living expenses.10 On the basis of the record before us, we cannot
determine whether Settlement Officer Degiovanni abused her discretion by
10The notice of determination does not specifically state that petitioners' sec. 401(k) plan account will be levied upon, yet this was the only asset with positive net equity listed in the notice of determination's asset equity table. Of petitioners' total calculated RCP of $16,310, only $2,052 was attributable to future income while the remaining $14,258 was attributable to petitioners' sec. 401(k) plan account.
- 25 -
[*25] upholding the proposed levy notwithstanding petitioners' economic hardship
claim.
B. Petitioners' Proposed Collection Alternatives
Assuming arguendo that petitioners' economic hardship claim does not bar
collection action entirely, we address Settlement Officer Degiovanni's
determination to reject petitioners' proposed collection alternatives. Petitioners
first proposed an OIC of $950 and later increased the amount *106 to $6,100 after the
Appeals Office rejected the first offer. Petitioners also proposed an installment
agreement with a payment of $120 per month. Settlement Officer Degiovanni
rejected the offers because they fell below petitioners' calculated RCP (for the
OIC) and monthly net income (for the installment agreement). Petitioners contend
that the settlement officer incorrectly calculated their RCP and/or monthly net
income by either (1) not reducing the section 401(k) plan account's net realizable
equity by the amounts of the additional loans petitioners took out during the
section 6330 hearing or (2) failing to reduce petitioners' monthly income by the
amounts of the loan payments to the section 401(k) plan account.11 Petitioners
11In the petition, petitioners stated that Settlement Officer Degiovanni would not allow all of their current medical expenses in the calculation of their monthly net income. Settlement Officer Degiovanni allowed petitioners' medical expenses of $550 as stated on their Form 433-A plus an additional $76 per month on the
(continued...)
- 26 -
[*26] also assert that their RCP has changed since the time of the settlement
officer's determination because of their middle son's death.
1. Collection Alternatives Generally *107 During the course of a section 6330 hearing taxpayers may propose
collection alternatives such as an OIC or an installment agreement. Sec.
6330(c)(2)(A)(iii); Giamelli v. Commissioner, 129 T.C. 107, 112 n.3 (2007).
Pursuant to section 7122(a) the Secretary may compromise any civil or
criminal case arising under the internal revenue laws before its referral to the
Department of Justice. Section 7122(d) authorizes the Secretary to prescribe
guidelines for officers and employees of the IRS to determine whether an OIC is
adequate and should be accepted. Accordingly, we generally uphold the rejection
of an OIC when the Appeals Office has followed the IRM. See, e.g., Churchill v.
Commissioner, T.C. Memo. 2011-182, 102 T.C.M. (CCH) 116, 117 (2011);
11(...continued)
basis of medical records they provided during the sec. 6330 hearing. Because the administrative record demonstrates that Settlement Officer Degiovanni allowed all of the medical expenses that petitioners claimed, it appears that the Appeals Office did not abuse its discretion in considering this medical expense issue. SeeJohnson v. Commissioner, T.C. Memo. 2007-29 (holding that the Appeals Office properly considered the taxpayer's current medical expenses in calculating RCP when it allowed the full amount of medical expenses that he had claimed), aff'd inrelevant part sub nom. Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009). Petitioners conceded this issue at trial.
- 27 -
[*27]Atchison v. Commissioner, T.C. Memo. 2009-8, 97 T.C.M. (CCH) 1034,
1036 (2009).
Petitioners *108 do not challenge the existence or amount of the underlying
liability. Their challenge focuses on their claimed inability to pay and their
difficult financial circumstances.
The Commissioner may accept an OIC of a Federal tax debt on the grounds
of "Doubt as to collectibility", among others. Sec. 301.7122-1(b)(1), (2), and (3),
Proced. & Admin. Regs. In making a determination regarding collectibility, the
Secretary must calculate a taxpayer's ability to pay. Id. para. (c)(2). Generally,
this type of OIC will be accepted only if the amount offered equals or exceeds the
taxpayer's RCP; i.e., the amount that the IRS could collect through other means
such as administrative and judicial collection remedies. Rev. Proc. 2003-71, sec.
4.02(2), 2003-2 C.B. 517, 517; see IRM pt. 5.8.1.1.3 (Mar. 16, 2010). The IRM
sets forth procedures for analyzing a taxpayer's financial condition to determine
the taxpayer's RCP. See IRM pt. 5.8.5.1 (Sept. 23, 2008). A taxpayer's RCP is
generally defined as the sum of (1) the taxpayer's net realizable equity in assets
(net realizable equity) and (2) the amount collectible from the taxpayer's expected
future income after allowing for payment of necessary living expenses. Id. pt.
5.8.4.3.1 (June 1, 2010); seesec. 301.7122-1(c)(2)(i), Proced. & Admin. Regs.
- 28 -
*109 [*28] (stating that the Secretary is required to "permit taxpayers to retain sufficient
funds to pay basic living expenses").
Sec. 6159(a) authorizes the Secretary to enter into an installment agreement
upon determining that the proposed agreement would facilitate full or partial
collection of the taxpayer's liability. An installment agreement generally does not
reduce the amount of taxes, interest, or penalties that the taxpayer owes but rather
allows the taxpayer to pay the liability over time. Seesec. 301.6159-1(c)(1)(ii),
Proced. & Admin. Regs. The decision to accept or reject installment agreements
lies within the discretion of the Commissioner. Thompson v. Commissioner, 140
T.C. 173, 179 (2013) (citing section 301.6159-1(a), (c)(1)(i), Proced. & Admin.
Regs.). If a settlement officer follows all statutory and administrative guidelines
and provides a reasoned and balanced decision, the Court will not reweigh the
equities. Id.; Lipson v. Commissioner, T.C. Memo. 2012-252, at *9 (citing Fifty
Below Sales & Mktg., Inc. v. United States, 497 F.3d 828, 830 (8th Cir. 2007)).
IRM pt. 5.14.1.4(4) (June 1, 2010) states: "Installment agreements must
reflect taxpayers' ability to pay on a monthly basis throughout the duration of
agreements." A taxpayer's ability to pay is determined by comparing his monthly
income to allowable expenses. Thompson v. Commissioner, 140 T.C. at 179-180
(discussing allowable monthly expenses); Friedman v. Commissioner *110 , T.C. Memo.
- 29 -
[*29] 2013-44, at *9. In reviewing for abuse of discretion the Court ordinarily
does not recalculate a taxpayer's ability to pay nor substitute its judgment for that
of the settlement officer. See, e.g., Boulware v. Commissioner, T.C. Memo. 2014-
80.
2. Settlement Officer Degiovanni's Calculation of Petitioners' Ability To Pay
Petitioners contend that Settlement Officer Degiovanni did not properly
account for Mr. Gurule's section 401(k) plan account loans in calculating their
ability to pay, whether by reducing the net realizable equity of the section 401(k)
plan account or by reducing their monthly net income by the amounts of the loan
payments. Respondent contends that petitioners are not entitled to any adjustment
to their monthly net income because petitioners are essentially repaying a loan to
themselves and allowing an adjustment would result in double counting the
section 401(k) plan account encumbrances. Respondent further avers that
petitioners may not receive a reduction in the net realizable equity of the section
401(k) plan account because the additional loans Mr. Gurule took are "dissipated
assets".
Initially, before Mr. Gurule took out the additional loans, Settlement Officer
Degiovanni calculated the net realizable equity of Mr. Gurule's section 401(k)
- 30 -
[*30] *111 plan account by reducing its cash value by encumbrances (the first two
section 401(k) plan account loans) and tax consequences. See IRM pt. 5.8.5.9
(Oct. 22, 2010). However, Settlement Officer Degiovanni determined not to
reduce the section 401(k) plan account's net realizable equity by the amounts of
the two additional loans because "[w]e will not consider additional encumbrances
against your 401(k), which you chose to take when you were aware that you had
an outstanding tax liability."
Although the settlement officer did not further reduce the net realizable
equity of the section 401(k) plan account, she allowed a $536 monthly expense for
Mr. Gurule's section 401(k) plan account loan payments. This allowance reduced
petitioners' calculated monthly net income. Respondent contends that this
adjustment favored petitioners because ordinarily loan payments to a retirement
account are not allowable as an expense in calculating RCP, as retirement account
loan payments are essentially moving a taxpayer's money from one account to
another. See id. pt. 5.8.5.20.4(9) (Oct. 22, 2010). However, Settlement Officer
Degiovanni determined it was appropriate to include the loan payments in
petitioners' RCP because the loans originated, at least in part, to pay necessary *112 medical expenses.
- 31 -
[*31] According to the case activity report, Settlement Officer Degiovanni
allowed petitioners a monthly expense of $536 for the loan payments on the basis
of Mr. Gurule's earnings statement that petitioners provided.12 However, the
record establishes that Mr. Gurule was paid biweekly for all relevant periods. The
earnings statements on which Settlement Officer Degiovanni relied reflected
biweekly earnings and not monthly earnings.
In sum, after Mr. Gurule took out the third section 401(k) plan account loan,
Settlement Officer Degiovanni did not adjust the net realizable equity of the
section 401(k) plan account for the balance remaining on the section 401(k) plan
account loans or adjust petitioners' monthly net income by the full amount of the
loan payment per month. Thus, it appears that Settlement Officer Degiovanni may
have made a material error in calculating petitioners' RCP.
In at least one instance, the IRM sanctions the use of an inflated RCP for
public policy reasons. A dissipated asset is any asset, liquid or illiquid, that has
12Although petitioners told Settlement Officer Degiovanni that Mr. Gurule's loan payment had increased from $536 to $622 "coming out of each paycheck", she did not abuse her discretion *113 by relying on the then-outdated earnings statement because petitioners did not provide any updated documents showing the new amount. See Etkin v. Commissioner, T.C. Memo. 2005-245 (holding that an Appeals officer did not abuse his discretion when taxpayers did not provide updated financial information showing a change in circumstances); see also Orumv. Commissioner, 123 T.C. 1, 13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005).
- 32 -
[*32] been sold, transferred, or spent on nonpriority items or debts so that it is no
longer available to pay a tax liability. Johnson v. Commissioner, 136 T.C. 475,
487 (2011), aff'd without published opinion, 502 Fed. Appx. 1 (D.C. Cir. 2013).
The IRM instructs that a dissipated asset may be included in the RCP calculation
even though it is no longer at the taxpayer's disposal as a way to discourage
delinquent taxpayers from squandering money instead of paying taxes. Id.; IRM
pt. 5.8.5.16(3) (Oct. 22, 2010); see, e.g., Tucker v. Commissioner, 676 F.3d 1129,
1135 (D.C. Cir. 2012), aff'g135 T.C. 114 (2010), and aff'gT.C. Memo. 2011-67.
Settlement Officer Degiovanni's case notes indicate that she did not reduce
petitioners' calculated RCP by the total amount of the additional section 401(k)
plan account loans because she considered that amount to be a dissipated asset.
The IRM states that dissipated assets should not automatically be included
in the RCP calculation. See IRM pt. 5.8.5.16(1); id. pt. 8.23.3.3.2.3(2) (Oct. 14,
2011). The *114 IRM lists factors that the Appeals Office should analyze when
deciding whether to include dissipated assets in the RCP calculation.13 The IRM
13The factors to be evaluated are (1) when the assets were dissipated in relation to the offer submission, (2) whether the assets were used to pay for existing ongoing business operating expenses, (3) when the assets were dissipated in relation to the liability, (4) how the assets were transferred, (5) whether the taxpayer realized any funds from the transfer of assets, (6) how any funds realized from the disposition of assets were used, and (7) the value of the assets and the
(continued...)
- 33 -
[*33] also states: "When it can be shown through internal research or
substantiation provided by the taxpayer that the funds were needed to provide for
necessary living expenses, these amounts should not be included in the RCP
calculation." Id. pt. 5.8.5.16(5); see also Layton v. Commissioner, T.C. Memo.
2011-194; IRM pt. 8.23.3.3.2.3(5). Further, "[i]nclusion of the value of dissipated
assets must clearly be justified in the case file and documented on the ICS or
AOIC history, as appropriate."14 IRM pt. 5.8.5.16(4), (10).
The administrative record does not establish *115 that Mr. Gurule took out the
additional section 401(k) plan account loans intending to disregard the outstanding
tax liability, see IRM pt. 5.8.5.16(7), or that the loans otherwise qualify as
dissipated assets that should be included in the RCP calculation. In any event,
Settlement Officer Degiovanni's decision to treat the additional loan encumbrance
13(...continued)
taxpayer's interest in those assets. IRM pt. 5.8.5.16(4) (Oct. 22, 2010).
14The IRM instructs the Appeals Office to consider, but does not mandate, including dissipated assets in the RCP calculation when an investigation clearly reveals that assets have been dissipated with a disregard of the outstanding tax liability. IRM pt. 5.8.5.16(7); see also Tucker v. Commissioner, 676 F.3d 1129, 1135-1136 (D.C. Cir. 2012), aff'g135 T.C. 114 (2010), and aff'gT.C. Memo. 2011-67. Examples of when dissipated assets may result in an RCP increase include dissolving an IRA account to pay for a child's wedding or a vacation and selling real estate and gifting the proceeds to family members. IRM pt. 5.8.5.16(7), ex. 1.
- 34 -
[*34] as a dissipated asset was not clearly justified in the case file. Settlement
Officer Degiovanni included the purported dissipated asset in the RCP calculation,
but it is unclear to what extent she considered petitioners' unique circumstances *116 or
any of the factors that the IRM instructs the Appeals Office to consider. See id. pt.
5.8.5.16(1) ("The value of dissipated assets should not automatically be included
in the calculation of the RCP. Each particular case must be evaluated on its own
merit."); id. pt. 5.8.5.16(4); see also Titsworth v. Commissioner, T.C. Memo.
2012-12, slip op. at 18-19 ("Whether to include dissipated assets in a taxpayer's
RCP is not an automatic determination but must be evaluated on the basis of the
facts and circumstances of each case in the light of certain enumerated factors [in
the IRM]."). The case activity report and the notice of determination summarily
state that this amount is included in the RCP calculation because Mr. Gurule took
out the loans when petitioners knew of their outstanding Federal tax liability.
Especially considering that the subsequent loans appear to have been used to pay
necessary living expenses, we cannot properly review Settlement Officer
Degiovanni's conclusion and evaluate its impact on the Appeals Office's
determination with the cursory explanation in the administrative record. See IRM
pt. 5.8.5.16(4) and (5); see also Jones v. Commissioner, T.C. Memo. 2012-274, at
*32; Tucker v. Commissioner, T.C. Memo. 2011-67 (holding that the RCP
- 35 -
[*35] calculation should not include *117 the entire amount the taxpayer placed in his
day trading account as a dissipated asset if he later withdrew half the amount to
pay for basic living expenses).
Because the administrative record does not fully and clearly explain
Settlement Officer Degiovanni's treatment of the additional section 401(k) plan
account loans, we cannot determine whether she calculated petitioners' RCP
correctly at the time of the section 6330 hearing. Moreover, Settlement Officer
Degiovanni's calculation of petitioners' ability to pay also affected her
determination to reject petitioners' proposed installment agreement with a
payment of $120 per month. See IRM pt. 5.14.1.4(4). Although we do not
substitute our judgment for that of the Appeals Office in calculating a taxpayer's
ability to pay when the Appeals Office rejects an installment agreement, see, e.g.,
Boulware v. Commissioner, T.C. Memo. 2014-80, we can consider whether the
Appeals Office's decision to reject an installment agreement was the result of a
failure to properly consider the taxpayers' financial information in the record.
Because the record does not permit us to do so, a remand is appropriate.
A remand may also be appropriate when a taxpayer has experienced a
material change in circumstances between the time of the section 6330 hearing *118 and
the trial that affects the RCP calculation. Leago v. Commissioner, T.C. Memo.
- 36 -
[*36] 2012-39;Churchill v. Commissioner, T.C. Memo. 2011-182 (remanding to
the Appeals Office when the taxpayer's RCP had changed as a result of his
divorce); see INS v. Ventura, 537 U.S. 12, 14-18 (2002); SKF USA, Inc. v. United
States, 254 F.3d 1022, 1028 (Fed. Cir. 2001); Harrell v. Commissioner, T.C.
Memo. 2003-271 (remanding when a Supreme Court case decided after the notice
of determination resolved a relevant question about equitable tolling). Petitioners'
middle son passed away in August 2013 after the notice of determination was
issued. This tragic event constitutes a material change of circumstances for
petitioners, who had to take out a fifth section 401(k) plan account loan to pay his
final expenses and who are still unable to pay for the placement of his ashes in a
mausoleum. These additional costs could have affected petitioners' RCP and their
ability to pay their tax liability. On remand the Appeals Office is directed to
consider updated financial information that petitioners should provide to
document any change in their ability to pay resulting from their middle son's
death.
3. Special Circumstances
The IRS may accept an OIC on the basis of doubt as to collectibility when
the offer is less than the RCP if there are "special circumstances". *119 Rev. Proc.
2003-71, sec. 4.02(2); see Fairlamb v. Commissioner, T.C. Memo. 2010-22. For
- 37 -
[*37] this purpose, special circumstances are: (1) circumstances demonstrating
that the taxpayer would suffer economic hardship if the IRS were to collect from
him an amount equal to the RCP and (2) compelling public policy or equity
considerations that provide sufficient basis for compromise. See Murphy v.
Commissioner, 125 T.C. at 309; McClanahan v. Commissioner, T.C. Memo. 2008-
161; IRM pt. 5.8.4.2(4) (June 1, 2010) (stating that the factors establishing special
circumstances for doubt as to collectibility are the same as those considered under
effective tax administration); IRM pt. 5.8.11.2(2)(b) (Sept. 23, 2008). Factors
indicating economic hardship include, but are not limited to, (1) the taxpayer's
long-term illness, medical condition, or disability that renders him incapable of
earning a living, where it is "reasonably foreseeable that taxpayer's financial
resources will be exhausted providing for care and support during the course of
the condition"; (2) the taxpayer's monthly income is exhausted each month in
providing for care of dependents without other means of support; and (3) the
taxpayer is unable to borrow against the equity in assets and liquidation of those
assets to pay a tax liability would render the taxpayer *120 unable to meet basic living
expenses. Sec. 301.7122-1(c)(3)(i), Proced. & Admin. Regs.; IRM pt.
5.8.11.2.1(6) (Sept. 23, 2008).
- 38 -
[*38] Our analysis here closely tracks our analysis of petitioners' economic
hardship claim supra. The record does not show whether Settlement Officer
Degiovanni considered accepting petitioners' OIC on the basis of doubt as to
collectibility with special circumstances. See IRM pt. 5.8.11.4(2) (Sept. 23, 2008)
(instructing IRS employees to consider a taxpayer's OIC under doubt as to
collectibility with special circumstances when the taxpayer's RCP does not exceed
the tax liability and special circumstances exist). The notice of determination
states: "The IRS cannot compromise tax liabilities for less than the amount
determined to be reasonably collectible. Your Offer in Compromise was rejected."
Settlement Officer Degiovanni knew that Mrs. Gurule could not work because of
her neurological condition, and she also knew that Mr. Gurule had to take several
section 401(k) plan account loans to pay their son's medical expenses and other
basic living expenses. Even though Mr. Gurule had positive net realizable equity
in his section 401(k) plan account at that time, it was quickly being depleted to
pay basic expenses. Yet the notice of determination suggests *121 that the Appeals
Office rejected petitioners' OIC pro forma because the offer fell below the
calculated RCP. We cannot determine whether the Appeals Office gave due
regard to potential special circumstances before rejecting the offer. See Anderson
v. Commssioner, T.C. Memo. 2013-261 (remanding when it was unclear whether
- 39 -
[*39] the settlement officer properly considered the taxpayer's health in rejecting
the taxpayer's OIC with special circumstances); Leago v. Commissioner, T.C.
Memo. 2012-39 (same); see also Antioco v. Commissioner, T.C. Memo. 2013-35
(remanding when the settlement officer did not meaningfully consider the
taxpayer's special circumstances before rejecting her proposed installment
agreement).
IV. Conclusion
In the light of the inadequacy of the administrative record and the reasons
stated for rejecting petitioners' proposed collection alternatives, we are unable to
conclude whether it was an abuse of discretion for respondent to determine to
proceed with the proposed collection action for petitioners' 2009 tax liability.
Because a remand would be "helpful", "necessary", or "productive", see Kelby v.
Commissioner, 130 T.C. 79, 86 n.4 (2008); Lunsford v. Commissioner, 117 T.C.
183, 189 (2001); Churchill v. Commissioner, T.C. Memo. 2011-182, we will
remand the case to the Appeals Office for further consideration and clarification.
Upon remand *122 the Appeals Office shall consider any additional information or
evidence that petitioners may wish to submit, any new collection alternative that
petitioners may wish to propose, and any asserted change in circumstances.
- 40 -
[*40] We have considered the parties' remaining arguments and, to the extent not
discussed above, conclude that those arguments are irrelevant, moot, or without
merit. For the reasons identified above, we will remand this case to the Appeals
Office for further proceedings consistent with this opinion.
To reflect the foregoing,
An appropriate order will be issued.